### UNITED STATES v. SKINNER et al.

(District Court, S. D. New York. December 31, 1914.)

1. COMMERCE (§ 85*) — INTERSTATE COMMERCE COMMISSION — AUTHORITY AND POWERS—COMPELLING PRODUCTION OF EVIDENCE.

The Interstate Commerce Commission has power to compel the attendance and testimony of witnesses and the production of documents only in cases of complaint for violation of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [Comp. St. 1913, § 8563]) and in investigations upon matters that might have been made the subject of a complaint.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. § 85.*]

2. COMMERCE (§ 85*) — INTERSTATE COMMERCE COMMISSION — AUTHORITY AND POWERS—COMPELLING PRODUCTION OF EVIDENCE.

In an investigation by the Interstate Commerce Commission, pursuant to a Senate resolution reciting that the purposes of the investigation were to ascertain the beneficiaries of certain investments by a railroad company, whether such beneficiaries could be required to make restitution to the stockholders of the company, whether the company's officers or such beneficiaries were amenable to punishment, and what legislation might be recommended to prevent a recurrence of the evil, the Commission had no power to compel the attendance and testimony of witnesses and the production of papers, if the investigation made was limited to the purposes recited in the resolution, as in such case it did not relate to any specific

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

violation of the Interstate Commerce Act, or to matters that might have been the subject of a complaint before the Commission.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. § 85.*]

3. COMMERCE (§ 85*) — INTERSTATE COMMERCE COMMISSION — AUTHORITY AND POWERS—COMPELLING PRODUCTION OF EVIDENCE.

Where the Interstate Commerce Commission, on complaints made to it, instituted an investigation of the rates, resolutions, and practices of carriers, with a view to ascertaining whether specific violations of the Interstate Commerce Act had occurred, and thereafter an investigation was requested by a Senate resolution reciting purposes which would not have authorized the Commission to compel the testimony of witnesses, whether it had power to compel the testimony of witnesses, so that one testifying before it could claim immunity from prosecution for matters concerning which he testified, was to be determined by the subject-matter and scope of the investigation, and the resulting order of the Commission awarding relief, and not by the recitals of the resolution, or from the fact that the investigation was conducted under the title of the earlier investigation, commenced on complaint.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. § 85.*]

4. CRIMINAL LAW (§ 42*) — IMMUNITY STATUTES — NECESSITY OF CLAIMING PRIVILEGE.

Under Act Feb. 11, 1893, c. 83, 27 Stat. 443 (Comp. St. 1913, § 8577), providing that no person shall be excused from testifying before the interstate Commerce Commission on the ground that his testimony may tend to incriminate him, or subject him to a penalty or forfeiture, but that no person shall be prosecuted or subjected to any penalty or forfeiture on account of any matter concerning which he may testify before the Commission, a person, to be entitled to immunity from prosecution, must claim his constitutional privilege against self-incrimination while testifying before the Commission, since it was always competent for a person to voluntarily incriminate himself, and the statute was necessary only to enable the government to obtain testimony which otherwise would not be given, and the statute should not be construed as going further than the necessity of the case demanded, thereby conferring a gratuitous amnesty for crime, unnecessary for the purposes of law enforcement, especially as the government is entitled to know whether the testimony is given voluntarily, for the purpose of exoneration, or with the intention of claiming immunity, in order that it may exercise its option to admit the testimony and thereby grant the immunity, or reject the testimony and deny the immunity.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48; Dec. Dig. § 42.*]

5. CRIMINAL LAW (§ 42*)—IMMUNITY STATUTES—CLAIMING PRIVILEGE.

To place on a witness before the Interstate Commerce Commission the duty of claiming his constitutional privilege against self-incrimination as a basis for immunity against prosecution under Act Feb. 11, 1893, it is not necessary that the government should inquire of him whether or not he claims such privilege.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48; Dec. Dig. § 42.*]

6. CRIMINAL LAW (§ 42*)—IMMUNITY STATUTES—CLAIMING PRIVILEGE.

A witness before the Interstate Commerce Commission need not, to entitle him to immunity from prosecution under Act Feb. 11, 1893, formally assert his constitutional privilege against self-incrimination, it being sufficient if he asserts it in such manner as to apprise the examining tribunal and the law officer of the government conducting the investigation that he is unwilling to answer, because the answer may incriminate him, and to enable them to determine intelligently whether there is a likelihood of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

such incrimination; and such claim may even be assumed in some cases from the nature of the questions asked and the manner in which they are answered, but the circumstances must show that the tribunal was clearly informed of the witness' claim and its basis.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48; Dec. Dig. § 42.*]

William Skinner and others were indicted for offenses. On demurrers to defendants' special pleas in bar. Demurrers sustained.

H. Snowden Marshall, U. S. Atty., of New York City (R. L. Batts, Sp. Asst. Atty. Gen., of Austin, Tex., Frank M. Swacker, Sp. Asst. Atty. Gen., of Washington, D. C., and Robert Stephenson, of New York City, of counsel), for the United States.

Sullivan & Cromwell, of New York City (Royall Victor and Clarke M. Rosecrantz, both of New York City, of counsel), for defendants Skinner and Elton.

Murray, Ingersoll, Hoge & Humphrey, of New York City, and Cummings & Lockwood, of Stamford, Conn., for defendant Billiard.

GRUBB, District Judge. This matter is submitted on the plaintiff's demurrers to the separate special pleas of each of the defendants, setting up, in bar of the prosecution, the immunity they claim to have received, because of evidence given by them before the Interstate Commerce Commission, with regard to the transactions which form the basis of the indictment.

The plaintiff's demurrers question the sufficiency of all the pleas upon two grounds. They are: (1) That the pleas fail to show that the testimony was given pursuant to the requirement by the Commission in a proceeding in which the Commission had the power to compel the attendance and testimony of witnesses and the production of documents, and for that reason was not given under legal compulsion, within the meaning of the immunity statute; and (2) that the witnesses did not assert their constitutional privilege of declining to answer, when sworn before the Interstate Commerce Commission, upon the ground that their answers would tend to incriminate them, and that their answers were not compulsory, in the absence of such an assertion of their privilege, and did not earn them the immunity conferred by the statute.

[1] First. The power of the Interstate Commerce Commission to compel the attendance and testimony of witnesses and the production of documents embraces "only complaints for violation of the act, and investigations by the Commission upon matters that might have been made the object of complaint." Harriman v. Interstate Commerce Commission, 211 U. S. 407, 29 Sup. Ct. 115, 53 L. Ed. 253.

[2] On the one hand, the government's contention is that the purpose of the investigation, at which the defendants gave their testimony, is shown by the recitals of the Senate resolution, requesting the Interstate Commerce Commission to make the same, to have related to no violation of the Interstate Commerce Act or its amendments or supplements, and to have been instituted at the instance of the Senate, and

not upon complaint. The purposes of the investigation, so far as shown by the recitals of the Senate resolution, were to ascertain who were the beneficiaries of certain investments of the New York, New Haven & Hartford Railroad Company (the company under investigation) in the securities of other companies, as to whether such beneficiaries could be required to make restitution to the stockholders of the New Haven Company, as to whether the officers of the New Haven Company, responsible for the investments, and those receiving the benefits thereof, were amenable to punishment under existing laws, and what legislation the Commission might recommend, if any, to prevent the recurrence of the evil. It is quite clear that, if these recitals correctly state the only purposes of the investigation, the power of the Commission to compel the attendance and testimony of witnesses and the production of papers did not exist. It would not then relate to any specific violation of the act to regulate commerce or to matters that might have been the object of complaint before the Commission. Harriman v. Interstate Commerce Commission, 211 U. S. 407, 29 Sup. Ct. 115, 53 L. Ed. 253.

[3] Upon the other hand, the defendants contend: That the investigation, at which they gave their evidence before the Commission, was the continuance of an investigation entered upon before the Senate resolution was enacted. That the original investigation was entitled: "The New England Investigation. In the Matter of Rates, Classifications, Regulations and Practices of Carriers." That it was instituted upon complaints made to the Commission of such rates, regulations, and practices, and that its purpose was to investigate such rates, classifications, regulations, and practices, with a view to ascertaining whether specific violations of the act to regulate interstate commerce had occurred. The defendants contend that the reopened investigation, consequent upon the Senate resolution, was merely the continuance of the original investigation with the same purposes and character, and consequently within the class of investigations to effectuate which the Commission had the authority to compel testimony.

The character of the investigation is rather to be determined by its subject-matter, its scope, and the resulting order of the Commission awarding the relief, than by the title of the cause, on the one hand, or by the recitals of the Senate resolution requesting it, on the other. If the investigation was no broader than the recitals of the Senate resolution would indicate, no authority in the Commission to compel testimony existed. If the scope of the reopened investigation was broader than is indicated by the Senate resolution, and if the reopened investigation partook of the nature and character of the original investigation, then a different question would be presented—one which would have to be solved by reference to the subject-matter of the reopened investigation, as determined by the evidence taken by the Commission, the order made upon it, and the entire proceedings. The pleas contain no such exhaustive statement of the proceedings before the Commission as would enable the court to intelligently pass upon the question. It may be that the court takes judicial notice of them, in such sense as to have the benefit of them in determining the question upon demur-

rer. The conclusion I have reached upon the other ground of de-murrer does not make a decision of this ground imperative to a ruling on the demurrer to the pleas; and for that reason, and because of the unsatisfactory condition of the pleas in this respect, so far as they relate to the first point, no conclusion on that ground is expressed.

[4] Second. The second ground of demurrer to the pleas is that they fail to aver that the defendants asserted their constitutional privilege of silence upon the hearing before the Interstate Commerce Commission. The sufficiency of this ground is to be tested by the construction of the act of Congress which, it is claimed, confers immunity upon the defendants. This is the act of February 11, 1893. The plaintiff and the defendants differently construe the language of the act. The plaintiff contends that the words, "No person shall be excused from attending and testifying, or from producing books, etc., before the Interstate Commerce Commission, etc., on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to incriminate him or subject him to a penalty or forfeiture," designate as a class those who present their excuse upon this ground before the tribunal, which exacts of them their testimony, and are nevertheless required to give it. To this class, and it only, according to the plaintiff's contention, does the subsequent clause, which confers the immunity, apply, viz.:

"But no person shall be prosecuted or subjected to a penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify or produce evidence, documentary or otherwise, before said Commission, or in obedience to its subpœna, or the subpœna of either of them, or in any such case or proceeding."

On the other hand, the defendants' contention is that the function of these same words is to make inapplicable to proceedings before the Commission, or causes in the courts, involving violations of the act to regulate interstate commerce and its amendments or supplements, the fifth amendment to the Constitution, and the privilege of silence conferred by it, and so to provide that all persons, who testify before the Commission or in proceedings in the courts based on violations of the act, are immune from prosecution by reason of the subsequent clause in the act, regardless of whether they asserted their constitutional privilege of silence on the hearing. The solution of the question depends upon which of these two constructions is the correct one.

The language of the act is perhaps ambiguous. Certain it is that the authorities have differed as to the proper construction of this and similar acts. The authorities construing section 860 of the Revised Statutes are easily to be distinguished. That section is so framed as to make an assertion of the constitutional privilege impracticable with reference to at least some of its provisions. As an illustration, the provision protecting disclosures in pleadings. Again, statutes, the only effect of which is to deprive the government of the use of testimony elicited, and not to confer immunity on the witness testifying against prosecution for any crime concerning which the testimony related, are not so drastic as those conferring such immunity. The government, under the former, at most only loses the benefit of evidence

which it could not have otherwise obtained, while, under the latter, it loses the right to prosecute, although it might be able to prosecute with success without the use of the privileged testimony.

In the statute construed in the case of People of New York v. Sharp, 107 N. Y. 427, 14 N. E. 319, 1 Am. St. Rep. 851, there were two provisions, one analogous to section 860 of the Revised Statutes and one conferring immunity from prosecution. The feature of the statute involved in that case, however, was that which prohibited the use of the evidence given before the legislative committee, and not that which conferred immunity on the witness by reason of it. This should be taken into consideration in giving weight to the case as an authority. However, the New York cases seem to be unfavorable to the government's contention. The case of State v. Murphy, 128 Wis. 201, 107 N. W. 470, was decided by a divided court, so far as this point was concerned, and carries weight only as the reasoning in the individual opinions of the judges is persuasive. The question seems not to have been considered in any other state jurisdiction.

The question has not been decided by any federal appellate court. The decisions of the District Courts of the United States are not in harmony. On the side of the defendants' contention is the case of United States v. Armour & Co. (D. C.) 142 Fed. 808. We may lay to one side the federal cases construing section 860 of the Revised Statutes as inapplicable, and also the cases holding that the constitutional privilege of silence must be asserted to justify a declination to answer, where no immunity statute protects, since the question in those cases is not the same as that which this case presents. The case of United States v. Heike (C. C.) 175 Fed. 852 (Southern District of New York), is an authority for the government's contention. Its effect is that there must be a claim, either express or implied from the circumstances and character of the questions, of the right to decline to answer for fear of incrimination, in order to justify a subsequent claim of immunity. The question was not obiter. The District Judge directed a verdict for the government on defendant's plea of immunity, upon this and other grounds. The Supreme Court affirmed the lower court's ruling on a ground other than the effect of the failure to assert the privilege of silence, with the statement that other questions would have to be dealt with before a contrary decision could be reached.

In view of the ambiguity in the language of the act itself, and of the conflict in the authorities, importance should be given to the intention of Congress, as derived from the purpose to be subserved, and from the legislative history which preceded the enactment of the act of February 11, 1893. The purpose of Congress in enacting legislation of this character is expressed in the case of Heike v. United States, 227 U. S. 142, 33 Sup. Ct. 227, 57 L. Ed. 450, Ann. Cas. 1914C, 128, as follows:

"Of course there is a clear distinction between an amnesty and the constitutional protection of a party from being compelled in a criminal case to be a witness against himself. Amendment 5. But the obvious purpose of the statute is to make evidence available and compulsory that otherwise could not be got. We see no reason for supposing that the act offered a gratuity to crime. It should be construed, so far as its words fairly allow the construction, as coterminous with what otherwise would have been the privilege of the person concerned. We believe its policy to be the same as that

of the earlier act of February 11, 1893 (27 Stat. 443, c. 83), which reads: 'No perso·n shall be excused from attending and testifying,' etc. 'But no one shall be prosecuted,' etc., as now, thus showing the correlation between constitutional right and immunity by the form. That statute was passed because an earlier one, in the language of a late case, 'was not coextensive with the constitutional privilege.' American Lithographic Co. v. Werckmeister, 221 U. S. 603, 611 [31 Sup. Ct. 676, 55 L. Ed. 873]."

It was to make available testimony that was unavailable because of the privilege of silence conferred by the terms of the fifth amendment to the Constitution. The testimony that was unavailable, because of that amendment, was that which the witness showed, to the tribunal demanding it, might reasonably tend to incriminate him. It was because such testimony could not be compelled, because of the constitutional amendment, that Congress acted. It was always competent for a person to voluntarily incriminate himself, and Congress was consequently not called upon to legislate with reference to incriminating testimony voluntarily given, but only with reference to incriminating testimony which the witness declined to disclose for that reason. The act of Congress of February 11, 1893, consequently, could only have been intended to cover testimony which the government was unable to obtain because of the declination of the witness to answer, based upon its incriminating tendency, and under the protection of the fifth amendment. It is conceded that, to claim the protection of the amendment, the witness was required to assert under oath his privilege upon that specific ground and to make it reasonably certain to the tribunal before which he gave the testimony that its tendencey would be incriminating. If he testified without doing so, or refused to testify without doing so, in either case, the protection of the amendment was not available to him. The only contingency in which the statute protected him in declining to answer was in the event that, after being summoned and sworn, he placed his declination on the ground of the incriminating character of the answer which was demanded. It was to remove this constitutional bar to the securing of testimony that Congress legislated; and with no purpose to bestow immunity in cases where doing so was not necessary to obtain testimony, which could otherwise be refused. It was not the purpose of Congress to excuse wrongdoing for any other reason than that it was otherwise impossible to secure evidence to punish greater wrongdoing or more wrongdoers. The enforcement of the law and the punishment of those who break it is so essential to the existence of government that it will not be presumed that Congress went further in the direction of exemption than the necessity of the case demanded.

Its failure to go far enough to accomplish its design when section 12 of the original act to regulate commerce was enacted is persuasive of this restricted intention. It was not necessary to protect those who voluntarily gave incriminating testimony, because they were not within the protection of the Constitution. It was necessary for it to furnish to those who were compelled to testify—i. e., those who testified after asserting their right under the Constitution not to do so—protection equal to that afforded by the constitutional privilege of silence. Under the constitutional provision, compulsion did not arise because

of the summoning or swearing of the witness, but first arose when, after being sworn, the witness asserted his right to decline to answer by reason of the incriminating nature of the answer, and it was disallowed him. So that the only class of persons whose testimony Congress had occasion to make available by legislation was that class, whose evidence, when given, was compulsorily given, and, if declined, could not have been coerced. It seems reasonable to hold that this was the only class of persons which Congress has, in fact, legislated to protect. The other class of witnesses—those who assert no constitutional privilege, but testify without having done so—cannot be considered as having been compelled to testify in the constitutional sense, and so cannot have been in the mind of Congress, as entitled to any immunity as a substitute for the constitutional privilege. The evidence of this class of witnesses was available to the government, in the absence of immunity legislation, and if Congress has extended immunity to this class of witnesses it would be the conferring of a gratuitous amnesty for crime, unnecessary for the purposes of justice and law enforcement, and against the policy that requires all men to be punished alike for their wrongdoing. There being no occasion for extending such immunity, and the policy of the law forbidding it, it should not be held that Congress intended to grant it, unless the language of the act clearly demands that construction.

The defendants contend that the effect of the language of the act is to withdraw from the operation of the constitutional amendment the cases of all persons who testify before the Commission or on the other occasions or places mentioned in the act, and to confer on them all absolute immunity in its stead, and that, consequently, as the amendment is inapplicable to such cases, the witnesses are under no necessity for asserting their privilege of silence under it. The effect of this argument, if carried to its conclusion, would be to render immune all persons who testify before the Commission, including volunteers. It is because of the applicability of the amendment and the construction that has been given it that the testimony of volunteers stands on a different basis from that of those who assert their privilege of silence and are compelled to testify. Yet it was conceded by counsel for the defendants upon the hearing that the immunity statute does not cover the testimony of volunteers. The statute has not the effect of destroying the applicability of the amendment to the persons mentioned in it. It is beyond the power of Congress to place by statute a limitation upon a constitutional provision. The amendment still applies in the cases covered by the statute, as much so as it does in cases where the statute of limitations has become a bar to a prosecution; but the effect of the immunity statute, as of the limitation statute, is to do away with the possibility of injury to the witness from any crime disclosed by his testimony, and to furnish him with an even more secure protection than would be the silence guaranteed to him by the Constitution. It is only because of the impossibility of injury to the witness from the disclosure that the law compels it. The same reason has led the courts to compel the disclosure, when it was established that the statute of limitations had barred any prosecution for the crime. The courts sustain

immunity acts, not because Congress has any power by them to affect the operation of the constitutional amendment, but because they furnish a protection to one compelled to answer equal to or greater than the constitutional guaranty of silence.

In view of the purpose of Congress in enacting the Immunity Act, viz., to make available compulsory incriminating testimony, and to remove the obstacle to the use of such testimony, and in view of the fact that the only obstacle to the disclosure of such testimony that needed removal was that presented by the fifth amendment, and that it applied only in favor of witnesses who assert their constitutional privilege, and so are in the attitude of being compelled to testify, and does not apply to those who testify without asserting their privilege, and who are in the attitude of voluntary witnesses, I think the immunity should be limited to the class of witnesses in whose favor alone the obstacle existed; i. e., those who assert their privilege to decline to answer upon the constitutional ground of a tendency to incriminate.

It is contended by the defendants that the Immunity Act renders futile any assertion of the constitutional privilege, since, by the act, the witness is required to answer in any event. It may be true that the attitude of the witness, under the Immunity Act, renders the assertion of the constitutional privilege of no benefit to him. The defendants' contention, however, ignores the right of the government, the other party concerned, to have the witness assert his privilege before examination. It is still a valuable right from the government's point of view. The witness is clothed with an option to testify without asserting his privilege, in which event his testimony is voluntary, and entitles him to no immunity, or to testify only after the assertion of his privilege, and after its denial to him, in which event the evidence given by him is compulsory and entitles him to immunity. The government is entitled to know which option the witness selects. The government is also entitled to be informed, before the examination of the witness, that the witness claims the answer he is asked to give will tend to incriminate him, and in what way. The government is itself clothed with an option which cannot be intelligently exercised until there has been an assertion of privilege by the witness. It is entitled to know whether immunity will follow from the examination of the witness. It has the option to receive the testimony and thereby grant the immunity, or to reject the testimony and deny the immunity. The question of privilege cannot be determined until the witness has been summoned and sworn before the examining tribunal. Then for the first time the government must make its election. In order to intelligently make the election, it must be apprised first as to whether the witness gives his testimony voluntarily for the purpose of exoneration, or involuntarily, because he would be compelled to testify if he refused. Only in the latter case would immunity flow from his evidence. If the witness fails to assert his privilege, the government would have the right to assume that immunity was not desired by him, and that permitting him to testify would not be attended with that result. If the witness claimed his privilege upon the ground of probable incrimination, then the government would be called upon to elect whether it

would proceed with the examination, and so confer the immunity or whether it would abandon the questions and leave the witness unimmune. It could not make this election until it knew (1) that the witness was unwilling to testify, and (2) that and how it was claimed the desired evidence would tend to incriminate. This it could only learn from the witness' assertion of privilege. The assertion of the constitutional privilege by the witness desiring immunity is not, therefore, a futile thing, so far as the interest of the government is concerned.

[5] It is also contended by the defendants that the witness should not be required to assert his privilege, but it should be left to the government to inquire of him whether it was claimed, and, failing to do so, it should be assumed that it was claimed. The practice under the fifth amendment has been concededly the other way. The witness, in many cases, is alone informed as to whether his evidence will tend to incriminate him. The supposed incrimination may relate to offenses not under investigation by the examining tribunal, and of the existence of which or of the relation of the desired evidence to which the examining tribunal or the government law officer may have no knowledge. The Heike Case is an apt illustration of this possibility. The witness is likely to have exclusive knowledge as to what facts and what answers may tend to his incrimination, and with reference to what offenses. Again, the witness alone knows whether he willingly gives his evidence for the purpose of exonerating himself, or only with the expectation of receiving immunity therefor. He is therefore in a better position to be called upon to assert his constitutional privilege than is the examining tribunal or the law officer of the government to call upon him to elect to do so. If any hardship attends the imposition of this burden on the witness, it has never been considered weighty enough to relieve him therefrom in exercising his constitutional privilege, prior to the immunity statutes. The immunity granted by the statute is a mere substitute for the constitutional safeguard, and has been held by the Supreme Court to be coterminous with it. There would seem, therefore, to be no reason for a different practice as to the assertion of the privilege where immunity is desired and where the constitutional privilege is insisted upon.

[6] The defendants also present the argument that the necessity for the assertion of the privilege of the witness would embarrass the examining tribunal in the conduct of the examination by the frequent appeals of the witness to the court, and that it was the purpose of Congress by this legislation to avoid such embarrassments. In view of the fact that the assertion of privilege is no reason, where there is an immunity statute, for the witness to decline to answer, such apprehended embarrassments would appear illusory. The witness would have no reason for persisting in a refusal which he knew would not be sustained by the court. The purpose of the assertion is only to apprise the examining tribunal that the answer, if given, will be compulsory, and immunity will flow to the witness therefrom. It need not be a formal assertion. It is enough if it apprise the examining tribunal, and the law officer of the government conducting the investigation, that the witness is unwilling to answer because the answer may

incriminate him, and enough of the manner in which this may be done to enable them to determine intelligently whether there is a likelihood of such incrimination. It may even be assumed, in the absence of express assertion, in some cases from the nature of the questions asked and the manner in which they are answered. The circumstances, however, must be such as to show that the tribunal was clearly informed of the claim of the witness and its basis. This was what was intended by the court in the opinion in the case of United States v. Heike (C. C.) 175 Fed. 852.

My conclusion is that the Immunity Act was intended only to make available testimony compulsorily given, and only to reward the unwilling giver of such evidence; that testimony given without the assertion of the constitutional privilege, or declined to be given upon any other ground than that of its incriminating tendency, is not compulsory testimony under the fifth amendment, and has always been available without new remedial legislation; and so, there being no necessity for conferring immunity on the giver of it, Congress will not be construed to have done so, where its language may be reasonably otherwise construed, as is the case with the statute under construction in this case.

No one of the pleas contain any averment of either an express or an implied assertion of the defendants' privilege on the hearing before the Commission, and for that reason the demurrers to each of the defendants' separate pleas are sustained.