[Crim. No. 10693. In Bank. May 5, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. THOMAS KING
et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, Edward P. O'Brien, Paul N. Halvonik and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Appellant.

Lucille F. Athearn, Jay R. Mayhall and James Martin MacInnis for Defendants and Respondents.

SULLIVAN, J.—Defendants Andrew Hart and Thomas King were charged in an indictment with conspiracy to commit grand theft (Pen. Code, § 182) and in each of two additional counts with grand theft (Pen. Code, §§ 484, 487). Their motion to set aside the indictment was granted, and the People appeal.

The indictment arose out of an investigation by the Insurance Commissioner of Consumers and Distributors Insurance Exchange (Consumers) a reciprocal insurer (Ins. Code, §§ 1280-1540[1]) and Indemnity Management Corporation (Indemnity) its attorney-in-fact. On August 7, 1964, upon his application asserting *inter alia* that Consumers was insolvent and that the further transaction of business by Consumers and Indemnity would be hazardous to their policyholders, creditors and the public, the commissioner was appointed by

---

[1]Hereafter, unless otherwise indicated, all section references are to the Insurance Code.

the superior court[2] conservator of both companies and "directed forthwith to take possession of all of the books, records, property, real and personal and the assets" of each. Defendants King and Hart were the general manager and vice president respectively of Indemnity.

On August 11, 1964, upon application of the commissioner the court made an order in the aforementioned conservatorship proceedings (see fn. 2, *ante*) entitled "Order to Deliver Records Insurance Code Section 1020"[3] directing defendants King and Hart and others to appear at the commissioner's office in San Francisco at a specified time on August 14, 1964, and to "bring with them at that time any or all of the below listed records" of Consumers and Indemnity in their possession and "*at such time and place . . . answer under oath, all questions asked by the Insurance Commissioner, or his duly appointed representative*" (italics added), concerning matters relating to the affairs of both corporations. While the initial paragraph of the order refers to section 1020,[4] the order does not otherwise purport to rely on section 1020 as authority for the compulsion of oral testimony, and there is no language in the section relating to the compulsion of oral testimony in futherance of its purpose (see fn. 3, *ante*).

Defendant King did not appear at the commissioner's office

[2]The proceedings are entitled: "Superior Court of the State of California, City and County of San Francisco, STAFFORD R. GRADY, Insurance Commissioner of the State of California, Applicant, vs. CONSUMERS AND DISTRIBUTORS INSURANCE EXCHANGE and INDEMNITY MANAGEMENT CORPORATION, a CALIFORNIA corporation, its Attorney-in-Fact, Respondents, No. 546048."

[3]Section 1020 provides in pertinent part: "Upon the issuance of an order either under Section 1011 or 1016, or at any time thereafter, the court shall issue such other injunctions or orders as may be deemed necessary to prevent any or all of the following occurrences:

"(a) Interference with the commissioner or the proceeding.

"(b) Waste of assets of such person.

"(c) The institution or prosecution of any actions or proceedings.

"(d) The obtaining of preferences, judgments, attachments, or other liens against such person or its assets.

"(e) The making of any levy against any such person or its assets.

"(f) The sale or deed for nonpayment of taxes or assessments levied by any taxing agency of property: (1) Owned by such person. (2) Upon which such person holds an encumbrance. (3) Upon which such person has prior thereto commenced an action to foreclose any deed of trust or mortgage. . . ."

[4]Said paragraph states: "WHEREAS, Insurance Code Section 1020 provides that this court shall issue such order and injunction as are necessary to prevent interference with the Commissioner or Conservatorship proceedings and to prohibit any managing general agent or attorney-in-fact from withholding any books, records, accounts, documents or other writings relating to the business."

on August 14 as directed. Although defendant Hart appeared he produced no records and refused to answer any questions on the asserted ground that his answers might tend to incriminate him.

On August 17, 1964, the commissioner secured the issuance in the conservatorship proceedings of an order to show cause, returnable in the superior court on August 19, directing both defendants to show cause why they should not be adjudged in contempt of the order made on August 11, 1964. On that day only Hart appeared, King pleading illness through his counsel. Hart's counsel, after being advised that Hart could not be compelled to testify as to the contempt charges, nevertheless volunteered Hart's testimony, stating that his sole purpose in so calling his client was to refute the commissioner's showing on the contempt charge. Hart was then examined only as to such matters by his counsel. On cross-examination, however, Hart was questioned at great length and without objection as to transactions involving the corporate affairs, which transactions form the basis for the criminal charges here in issue. At no time did Hart or his counsel assert the privilege against self-incrimination. Proceedings were continued to the following day.

On August 20, the records sought by the commissioner, or substantially all of them, were produced in court by counsel representing Hart and King. King also appeared in court, although he was not called as a witness. The court held Hart not to be in contempt. It further directed that King appear before the Insurance Commissioner ''in accordance with the original subpoena [order of August 11]'' at a specified time and place, and ruled that as King had complied with the court order to produce the records ''the Court purges him of that contempt,'' and also that when he appeared to testify he would be ''purged of that contempt.'' The court nevertheless stated that King could assert the privilege against self-incrimination and refuse to testify before the commissioner, if he chose to do so at the time he appeared. On August 28 King appeared before the commissioner and freely testified as to the transactions which form the basis for the violations charged in the instant indictment. Neither he nor his counsel asserted the privilege against self-incrimination.

On September 24, 1964, the court again issued an order directing that Hart, among other things, appear before the commissioner on September 29 and answer questions concerning the business affairs of the two corporations. Hart ap-

peared on the appointed date with counsel, who asked what statutory provisions authorized the taking of Hart's testimony. The commissioner replied that Hart's appearance had been compelled under a court order pursuant to section 1020 of the Insurance Code. Hart answered all questions put to him without asserting the privilege against self-incrimination. His answers, together with those he gave at the contempt hearing on August 19 and those of King on August 28, concern the same matters which form the basis for the charges contained in the instant indictment, thereafter filed. We are not here concerned with the merits of those charges.

Defendants' motion to set aside the indictment pursuant to Penal Code section 995 was denied. Thereafter they moved to quash the indictment upon the ground that having been compelled to testify in hearings before the commissioner they ''were entitled to the immunity provided for in . . . section 12924(b). . . .''[5] The motion was granted, the court making its order setting aside the indictment and dismissing the action as to both defendants. This appeal followed.

The Attorney General contends that defendants neither testified under compulsion of a *subpoena* issued by the commissioner nor claimed their privilege against self-incrimination when appearing before him; that, on the contrary, they testified under compulsion of *court orders* rendered pursuant to section 1020 which makes no provision for immunity; and that as a consequence defendants did not come within section 12924 and did not receive immunity from prosecution as therein provided. However the record clearly discloses that defendants were compelled to testify because of legal proceedings initiated by the commissioner. ■ The decisive question, then, is whether the state can withhold immunity because the commissioner purported to act pursuant to a statute

---

[5]Section 12924 provides in pertinent part: '' (a) The commissioner may issue subpoenas for witnesses to attend and testify before him on any subject touching insurance business, or in aid of his duties. Such process may be served, obeyed, and enforced as provided in the Code of Civil Procedure for civil cases. A defaulting witness may be punished as provided in the Penal Code. . . .

'' (b) A person shall not be excused from testifying or from producing any book, document, or other thing under his control upon any such hearing or investigation on the ground that his testimony, or the book, document, or other thing required of him, may tend to incriminate him, or may have a tendency to subject him to a punishment for a felony or misdemeanor; but no person shall be prosecuted or punished by any criminal action or proceeding for or on account of any act, transaction, matter or thing concerning which he is so compelled to testify under oath, except for perjury committed in such testimony.''

(§ 1020) which did not provide for immunity and by which he was not authorized to, but nevertheless did, compel testimony, or whether immunity was conferred on defendants because the commissioner, in effect, succeeded in compelling their testimony and his only statutory authority for doing so (§ 12924) required a grant of immunity. We have concluded that under the facts and circumstances of the instant case, the commissioner, having in effect exercised the authority granted him by section 12924 and availed himself of its benefits, committed the state to grant immunity to defendants in exchange for their compelled testimony.

Since it appears without contradiction from the record that both King and Hart testified before the commissioner on the occasions mentioned only as a result of the coercive action initiated by the latter, we must determine what in fact was the commissioner's authority to compel them to appear and testify. Clearly he was invested with authority to issue a subpoena which has long been recognized both in judicial and administrative proceedings as the "process by which the attendance of a witness is required . . . ." (Code Civ. Proc., § 1985; see *People* v. *Schwarz* (1926) 78 Cal.App. 561, 571-572 [248 P. 990].) As previously noted (see fn. 5, *ante*) section 12924, subdivision (a), authorizes the commissioner to issue subpoenas for witnesses "to attend and testify" and to serve and enforce his process "as provided in the Code of Civil Procedure for civil cases," defaulting witnesses to be also punished "as provided in the Penal Code."

However, the People argue that defendants were never served with any such process issued by the commissioner under section 12924, The sole basis for the compulsion of the testimony, it is urged, is section 1020 under which the *court* and not the *commissioner* issued the command to testify. While section 1020 is a basis for the court to "issue such other injunctions or orders as may be deemed necessary to prevent" certain "occurrences" specified therein (see fn. 3, *ante*), we do not find, nor does the Attorney General point out to us, any language in said section purporting to authorize an order directing witnesses to appear and testify before the commissioner. Our reading of section 1020 is fortified by the fact that section 12924 does provide the commissioner with an instrument to compel such appearance and testimony.[6] Since

---

[6]Section 1020 is found in article 14 (Proceedings in Cases of Insolvency and Delinquency) of chapter 1 (General Regulations) of part 2 (The Business of Insurance) of division 1 (General Rules Governing

it was actually the commissioner who sought to compel the testimony and since his authority to do so was resident only in section 12924, we think that it would be giving approval to sheer formalism, to say that he did not compel the testimony

---

Insurance). Section 12924 is found in article 1 of chapter 2 (Powers and Duties) of division 3 (The Insurance Commissioner). We can find no reason, nor is any asserted, which would preclude or limit the exercise by the commissioner of his subpoena power in connection with proceedings inquiring into the insolvency or delinquency of an insurance company (§§ 6, 12921). Section 12921 provides: ''The commissioner shall perform all duties imposed upon him by provisions of this code and other laws regulating the business of insurance in this State, and shall enforce the execution of such provisions and laws.''

In a petition for rehearing the commissioner for the first time invokes section 1042 (also found in the above article 14 of the code dealing with insolvency and delinquency proceedings) which in relevant part provides: ''The commissioner . . . shall have the power to subpoena witnesses and examine them under oath upon any subject relating to the affairs and business of any person affected by proceedings under this article. . . .'' At no time in the proceedings below did the commissioner rely on section 1042 as authority for his action, his undeviating position being that he was seeking to compel testimony by court orders obtained under section 1020. As we have explained, his action in this respect was tantamount to compelling defendants to ''testify before him'' and ''not be excused from testifying'' (§ 12924). Thus the commissioner can no more be deemed to have sought defendants' testimony under section 1042 than under section 1020. Nor does he at this late hour furnish us with any analysis of sections 1042 and 12924 or of the relationship between such sections to the end of impelling conclusions other than those herein reached.

Section 1042 and the *first paragraph* of section 12924 were included in the Insurance Code upon its enactment in 1935. (Stats. 1935, ch. 145, pp. 496, 547, 774.) Section 1042 is based on Statutes 1919, chapter 178, section 7, pages 267, 268. Chapter 178 was entitled ''An act to provide for proceedings against and liquidation of delinquent insurance corporations and associations.'' Section 7 in relevant part provided: ''During the progress of any proceedings taken under this section, the insurance commissioner . . . shall have all of the powers given to the insurance commissioner, his deputy or any examiner authorized by him, including the power to examine under oath the persons specified in such section, and to compel the production of books and papers as therein provided.'' Section 12924 is based on Statutes 1867-1868, chapter 300, section 10, page 339, former Political Code section 599 as repealed and reenacted by Statutes 1907, chapter 119, section 1, pages 141, 149, *and also* on the above-mentioned Statutes 1919, chapter 178, section 7, pages 267, 268. It is clear that to the above extent sections 1042 and 12924 share a common origin and that the subpoena power of the commissioner referred to in the former section is the same power of subpoena invested in the commissioner by section 12924 as among the general powers and duties of his office (see §§ 12900-12977). The insurance code does not invest him with two or more different *kinds* of subpoena power. In 1937 section 12924 was amended to read substantially as it does now (with minor amendments in 1945 not here material) by adding the second and third paragraphs of said section and thus the immunity provisions found in the third paragraph. (Stats. 1937, ch. 724, § 11, p. 2021.) These immunity provisions qualify and control the commissioner's subpoena power whenever or however it is exercised, irrespective of section nomenclature or numbering.

because the process, though obtained by him, was not over his signature. The significant aspect of the whole proceeding thus is his compulsion of the testimony irrespective of the externals of the compulsive process.

On close scrutiny, then, the court order of August 11, which the commissioner secured on his own application, purported to serve a dual purpose: First, it was, as its title indicates, an "order to deliver records" under section 1020; and secondly, it required defendants personally to appear and testify before the commissioner. The order thus served the purpose of both a subpoena *duces tecum* and a subpoena *ad testificandum* the interrelation of which was considered in *McLain* v. *Superior Court* (1950) 99 Cal.App.2d 109 [221 P.2d 300].

In *McLain,* the defendant in a criminal action had been served with a subpoena issued by a legislative subcommittee. It was addressed to a corporation and to the defendant as an officer thereof, and directed that they appear as witnesses and bring to a committee hearing documents relative to the corporate activities. The defendant appeared, turned over certain documents, and testified concerning those documents which later formed the basis of criminal charges against him. He claimed immunity under section 9410[7] of the Government Code which, as then applicable, provided an immunity for any person sworn and examined by the Legislature or a committee thereof. The court, after discussing the history of compulsory testimony and noting the limitation of a subpoena *duces tecum,* stated: "Compulsion to testify is ordinarily brought about through subpoena *ad testificandum* or the swearing of a person who, although not subpoenaed, is actually in the presence of the tribunal and therefore can be made to respond to the general duty of all citizens to give testimony. There is no necessary connection between the two writs. Their functions are different and although they are in many cases combined in one form, as was the case here, nevertheless that is a mere matter of convenience and does not combine them in substance." (99 Cal.App.2d 109, 115.)

After noting that a witness who appeared in response to a direction to produce documentary evidence could not be compelled to testify generally, the court continued: "However, when petitioner was sworn he became a witness pursuant to

---

[7]The pertinent portion of section 9410, as it does now, then provided: "A person sworn and examined before the Senate or Assembly, or any committee, cannot be held to answer criminally or be subject to any penalty or forfeiture for any fact or act touching which he is required to testify."

the *ad testificandum* part of the process served upon him.
. . . If, therefore, after the production of the books and
papers in response to the subpoena *duces tecum,* by which
production the demands of that process had been met, the
petitioner, in response to appropriate questioning, gave testi-
mony touching the facts and acts for which he now stands
under indictment, no reason appears why he should not have
the immunity granted him by the statute in exchange for his
constitutional privilege against self-incrimination.'' (99 Cal.
App.2d at pp. 116-117.)

In *McLain,* the witness, having been compelled by a sub-
poena issued by a legislative committee to appear before it
and having been sworn and testified, became entitled to the
immunity conferred by statute. A similar immunity is con-
ferred on witnesses subpoenaed before the Insurance Commis-
sioner who ''shall not be excused from testifying . . . but no
person shall be prosecuted or punished by any criminal action
or proceeding for or on account of any act, transaction, mat-
ter or thing concerning which he is so compelled to testify
under oath, except for perjury committed in such testi-
mony.'' (§ 12924, subd. (b).) In the instant case, as previous-
ly pointed out, the commissioner did not issue an administra-
tive subpoena but instead secured a court order to obtain the
testimony. He not only initiated but pursued, with the aid of
the court, processes which made available to him information
identical to that which he could have compelled only had
section 1020 or other enactments, by appropriate provisions,
*required* defendant to divulge the information sought by the
commissioner. Such a provision necessarily would have re-
quired a grant of immunity in order that it be valid and
operative. (See *Brown* v. *Walker* (1896) 161 U.S. 591, 594-595
[40 L.Ed. 819, 820, 16 S.Ct. 644] ; *Counselman* v. *Hitchcock*
(1892) 142 U.S. 547, 585-586 [35 L.Ed. 1110, 1121-1122, 12
S.Ct. 195].) The only provisions available to the commissioner
to this end were those contained in section 12924.

In the broad sense that a subpoena is a process for com-
pelling the attendance of a witness (Code Civ. Proc., § 1985)
the overall procedure by which defendants were required to
attend and testify before the commissioner was tantamount to
a ''subpoena,'' obtained and enforced by his efforts, even if
not bearing his signature. In attaining his objective he uti-
lized means ''provided in the Code of Civil Procedure'' with
the attendant threat of punishment ''as provided in the Penal

642

Code,'' all embraced within the scope of section 12924. The compulsion was generated by section 12924 although applied to its desired objective through the conduit of section 1020.

 Where the commissioner thus seeks the aid of available court processes in compelling the testimony of witnesses he cannot be heard to say that, because the process which ultimately compels the witness' attendance is not a document signed by his hand, but instead is a document issued by the court upon his application, the authority to proceed in examining such witness derives from some source other than section 12924 if, in fact, there is no other source of authority by which he can properly elicit oral testimony. To hold otherwise would permit the commissioner to do by indirection that which the law clearly forbids him to do directly.

Since, therefore, the compulsion of defendants' testimony before the commissioner can be made to rest only on the authority invested in the latter by section 12924, the issues presented to us herein are remarkably similar to those presented to the court in *McLain*. Here, as in that case, the accused were compelled to attend before a department or branch of the government of this state for the purported purpose of producing records. Here, as in *McLain*, the witnesses were sworn and testified as to matters going beyond the mere production of records and the scope of authority which purportedly compelled their attendance. Here, as in *McLain*, the extraction of such testimony creates the immunity provided by the Legislature as a fair exchange for the testimony given and for the overriding of the witnesses' privilege against self-incrimination.

 Regardless of the court's erroneous advice at the contempt proceedings that King could assert his privilege against self-incrimination when he appeared before the commissioner, a witness called under the authority of an immunity statute cannot decline to testify by asserting his privilege against self-incrimination, and upon testifying is entitled to the immunity without the necessity of first claiming the protection of his constitutional privilege where there is no statutory requirement that he do so. (*United States* v. *Monia* (1943) 317 U.S. 424, 430 [87 L.Ed. 376, 381, 63 S.Ct. 409]; *McLain* v. *Superior Court, supra,* 99 Cal.App.2d 109, 117; *People* v. *Schwarz, supra,* 78 Cal.App. 561, 572.)

In *Schwarz* it was urged that although witnesses may have been compelled to appear before the Commissioner of Corporations by proper process issued pursuant to the Corporate

Securities Act (Stats. 1917, p. 673), they could not be compelled to testify before the commissioner in a manner which would tend to incriminate them. "The weight of authority clearly supports the proposition that one who is brought into court under a subpoena and testifies pursuant thereto acts under compulsion." (78 Cal.App. at p. 570.) The witnesses being thus "so compelled to testify under oath"[8] concerning matters as to which the statute withdrew the privilege against self-incrimination, were held entitled to the immunity against prosecution for any act concerning which they testified although they did not assert their privilege.

Contrary to the foregoing the People contend that the gaining of immunity under section 12924 is conditional upon the assertion of the privilege against self-incrimination. They ignore the foregoing authorities and refer us to *In re Connolly* (1936) 16 Cal.App.2d 709 [61 P.2d 490], wherein immunity was claimed under the provisions of former Political Code section 304,[9] relating to the appearance of witnesses before legislative committees. The critical language in that case conferred immunity upon a witness as to any act concerning which "he is required to testify." The court concluded that Connolly was not required to testify as to the incriminating matters. It discerned this from evidence that Connolly "was requested to appear as a witness, that he apparently welcomed the opportunity, and that he volunteered some testimony which was not in answer to any specific question directed from the committee." (16 Cal.App.2d at p. 711.) The court concluded that compulsion was a condition precedent to immunity, and that in the particular case no compulsion had been exercised. We see nothing inconsistent in the *Connolly* decision with our holding herein that where one is compelled to testify the immunity attaches without the assertion of the privilege against self-incrimination in the absence of a statutory requirement for such an assertion.

The People also rely upon *People* v. *Eiseman* (1926) 78 Cal.App. 223 [248 P. 716], wherein it is stated that "the law

---

[8]The language, "so compelled to testify under oath" appeared first in the immunity provisions of the 1917 Corporate Securities Act (see Corp. Code, § 25354), and was incorporated into section 12924 of the Insurance Code in 1937. (Stats. 1937, ch. 724, § 11, p. 2021.)

[9]Former Political Code section 304 was the forerunner of Government Code, section 9410, involved in *McLain* v. *Superior Court, supra,* 99 Cal. App.2d 109.

contemplates that the witness claims the privilege of not giving testimony or of not furnishing evidence against himself before he is entitled to the immunity provided for'' by the Corporate Securities Act, wherein there was no requirement that the privilege be asserted. (78 Cal.App. at p. 250.) To the extent that the *Eiseman* case is inconsistent with the views enunciated herein, it is disapproved.

We attach no significance to the fact that at the contempt proceedings on August 19, prior to the time he had been compelled to appear and testify before the commissioner, Hart freely and voluntarily testified as to the matters constituting the instant criminal charges. That testimony was not compelled in any manner by provisions of the Insurance Code and no immunity was implicit in the circumstances in which the testimony was given. We have no doubt that had the commissioner not pursued the matter further, the People might have proceeded against Hart and successfully resisted any claim of immunity on his part. However, the commissioner thereafter compelled Hart's testimony under circumstances which, as we have seen, brought Hart within the provisions of section 12924. That section authorized the commissioner to proceed to examine Hart for whatever purpose the commissioner deemed would justify the immunity he would necessarily confer upon Hart. It was the commissioner's election, not Hart's to so proceed (see *United States* v. *Monia, supra,* 317 U.S. 424, 430 [87 L.Ed. 376, 381, 63 S.Ct. 409]) and if in proceeding the commissioner was not successful in obtaining information not already available to him, the immunity nevertheless attached as to all matters concerning which the commissioner did inquire. The grant of immunity does not turn on the *product* but rather the *fact* of the inquiry.

Nor is there anything express or implied in the language of section 12924 which conditions the grant of immunity upon the degree to which a witness, at the time he is compelled to testify, has already exposed himself or is otherwise exposed to prosecution for criminal charges relating to the matters concerning which he is examined. The immunity as to such matters is granted where the witness ''is so compelled to testify under oath,'' and is not conditioned upon any other circumstance. We therefore conclude that Hart was ''so compelled to testify'' and that, accordingly, there is no basis for withholding the legislative grant of immunity in his case.

Although it has been stated that Penal Code section 995 provides the only grounds upon which an indictment may

be set aside (*People* v. *Van Randall* (1956) 140 Cal.App.2d 771, 774 [296 P.2d 68]), a statutory grant of immunity enjoins the prosecution of a criminal action and thus deprives the court of jurisdiction to proceed. (*In re Connolly, supra,* 16 Cal.App.2d 709, 714.) Accordingly, an immunity statute cannot be given its proper effect unless it too is recognized as a proper basis for quashing an indictment. (See *McLain* v. *Superior Court, supra,* 99 Cal.App.2d 109.)

The order setting aside the indictment and dismissing the action is affirmed as to both defendants.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., and Burke, J., concurred.

Appellant's petition for a rehearing was denied May 31, 1967, and the opinion was modified to read as printed above.