[Civ. No. 32068. First Dist., Div. Two. Nov. 22, 1972.]

AUGUSTINE NELSON et al., Petitioners, v.
THE MUNICIPAL COURT FOR THE SAN FRANCISCO JUDICIAL
DISTRICT OF THE CITY AND COUNTY OF SAN FRANCISCO,
Respondent;
THE PEOPLE, Real Party in Interest.

890

## COUNSEL

Edward T. Mancuso, Public Defender, Michael Kossen and Geoffrey Brown, Deputy Public Defenders, Paul Briefer and Stephen J. Schern for Petitioners.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Edward P. O'Brien, Assistant Attorneys General, and Derald E. Granberg, Deputy Attorney General, for Respondent and for Real Party in Interest.

## OPINION

**TAYLOR, P. J.**—Petitioners, subpoenaed to testify as witnesses in a criminal prosecution, seek a writ of prohibition[1] to restrain the Municipal Court of the State of California, in and for the City and County of San Francisco, from imprisoning them for their refusal to testify after they

---

[1]For those petitioners sentenced to imprisonment, habeas corpus would appear to be a more appropriate remedy (Cal. Civil Writs (Cont.Ed.Bar 1970) § 10.42, p. 228), but in *Harlan* v. *Superior Court*, 94 Cal.App.2d 902 [211 P.2d 942], and *Cohen* v. *Superior Court*, 173 Cal.App.2d 61 [343 P.2d 286], prohibition was invoked to prevent enforcement of a contempt order sentencing petitioners to the county jail.

had been granted immunity pursuant to statute (Pen. Code, § 1324).[2] On September 7, 1972, the court adjudged petitioners in contempt of court and sentenced them to five days' imprisonment with a stay to permit petitioners to make application to this court.

We are here called upon to determine whether the state may compel *a witness* to whom it has granted immunity from prosecution pursuant to statute to give testimony notwithstanding his claim that his answers might tend to subject him to prosecution under federal law.[3]

■ We are not without guidance in the resolution of this question. In *Malloy* v. *Hogan,* 378 U.S. 1 [12 L.Ed.2d 653, 84 S.Ct. 1489], the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination must be deemed fully applicable to the states through the Fourteenth Amendment, and that "the same standards must determine whether [a witness'] silence in either a federal or state proceeding is justified" (p. 11 [12 L.Ed.2d at p. 661]). At the same time, the court decided *Murphy* v. *Waterfront Comm'n.,* 378 U.S. 52 [12 L.Ed.2d 678, 84 S.Ct. 1594]. *Murphy* overruled *Feldman* v. *United States,* 322 U.S. 487 [88 L.Ed. 1408, 64 S.Ct. 1082, 154 A.L.R. 982], which had held that testimony compelled by a state could be introduced into evidence in the federal courts.

*Murphy* recognized that the sweep of federal statutes had become so extensive that answers incriminating under state law almost invariably could be claimed to be incriminating under federal law, and that the states, who bear primary responsibility in this country for the administration of criminal laws, would be thwarted in investigations into matters of corruption and misconduct if immunity from federal prosecution was a constitutionally required condition to testimonial compulsion in state proceedings. *Murphy* set forth the following constitutional rule, which pertains to the disposition of the instant proceeding: ". . . we hold the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him. We conclude, more-

---

[2]The occasion was the preliminary hearing of a defendant charged with counts of pimping (Pen. Code, § 266h) and pandering (Pen. Code, § 266i). The questions petitioners refused to answer were designed to elicit information about whether the defendant had derived support from the proceeds of their prostitution and whether he had procured, caused, induced, persuaded or encouraged petitioners to become prostitutes.

[3]Petitioners have claimed that their answers, if compelled, could subject them to prosecution under 26 United States Code section 7201 (wilfully evading income tax), 18 United States Code section 1952 (interstate travel in furtherance of unlawful activity) and 18 United States Code section 2421 (the Mann Act).

over, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits.[18] This exclusionary rule, while permitting the States to secure information necessary for effective law enforcement, leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity." (P. 79 [12 L.Ed.2d at p. 695].)

The instant proceeding, as in *Murphy,* involves state witnesses, granted transactional immunity under state law, who refused to testify for fear of federal prosecution. The witnesses were granted immunity pursuant to the provisions of section 1324, subdivision (a), of the Penal Code, which provides, in part: "After complying, and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, that person *shall not be prosecuted or subjected to penalty or forfeiture for or on account of any fact or act* concerning which, in accordance with the order, he was required to answer or produce evidence." (Italics added.)

█ The immunity granted to the witnesses pursuant to Penal Code section 1324 is comparable to the immunity granted witnesses pursuant to the New Jersey statute before the U.S. Supreme Court in *Murphy.*[4] In view of the similarity of the wording of the California statute (Pen. Code, § 1324) and the New Jersey statute (N.J.S.A. 32:23-86 (5)), we conclude that the *Murphy* holding that the testimony in question could be compelled, since the federal government would be barred from *using* any of the testimony, or its fruits, in a subsequent federal prosecution, governs the disposition of this proceeding, and that petitioners, having been granted immunity pursuant to Penal Code section 1324, may be compelled to testify.

Our conclusion is fortified by the holding in *Kastigar* v. *United States,*

---

"[18]Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence."

[4]N.J.S.A. 32:23-86(5), in pertinent part, read as follows: " 'Immunity' as used in this subdivision means that such person *shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing* concerning which, . . . he gave answer or produced evidence, and that no such answer given or evidence produced shall be received against him upon any criminal proceeding." (Italics added.) (*Application of Waterfront Comm. of N.Y. Harbor* (1963) 39 N.J. 436 [189 A.2d 36, 45].) Webster's Seventh New Collegiate Dictionary defines a "transaction" as an "act," and a "fact" as "a thing done."

406 U.S. 441 [32 L.Ed.2d 212, 92 S.Ct. 1653]. In *Kastigar,* the Supreme Court was faced with the question whether testimony may be compelled by granting immunity from the use of the compelled testimony and evidence derived therefrom ("use and derivative use" immunity), or whether it is necessary to grant immunity from prosecution for offenses to which compelled testimony relates ("transactional" immunity).[5] Congress in 1970 had re-examined the applicable constitutional principles and the adequacy of existing law, and following the recommendation of the National Commission on Reform of Federal Criminal Laws, had enacted a new statute that deleted provisions granting immunity from *prosecution* for offenses to which the compelled testimony related, and provided instead for immunity from the *use* of compelled testimony and evidence derived therefrom (see *Kastigar, supra,* pp. 451-453 [32 L.Ed.2d at p. 221]). In construing this statute (18 U.S.C. § 6002),[6] the court held that "such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination and therefore is sufficient to compel testimony over a claim of the privilege" (p. 453 [32 L.Ed.2d at p. 222]). The court reasoned as follows: "While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being 'forced to give testimony leading to the infliction of "penalties affixed to . . . criminal acts." ' Immunity from the use of compelled testimony, and evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures

---

[5]The *Kastigar* court characterized immunity statutes as essential to the effective enforcement of criminal statutes, noting that their primary use has been to investigate offenses "of such a character that the only persons capable of giving useful testimony are those implicated in the crime." (P. 446 [32 L.Ed.2d at p. 218].) California courts have noted that the state immunity statute " 'makes it possible to reach leaders of criminal transactions by guarantying immunity to individuals who are often only underlings or minor participants.' " (*People* v. *Williams,* 11 Cal.App.3d 1156, 1164 [90 Cal.Rptr. 409].)

[6]18 United States Code section 6002, provided that when a witness is compelled by district court order to testify over a claim of the privilege, "the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."

that the testimony cannot lead to the infliction of criminal penalties on the witness." (P. 453 [32 L.Ed.2d at p. 222].)

The *Kastigar* court reaffirmed its holding in *Murphy* as follows: "But both the reasoning of the Court in *Murphy* and the result reached compel the conclusion that use and derivative use immunity is constitutionally sufficient to compel testimony over a claim of the privilege. Since the privilege is fully applicable and its scope is the same whether invoked in a state or in a federal jurisdiction, the *Murphy* conclusion that a prohibition on use and derivative use secures a witness' Fifth Amendment privilege against infringement by the Federal Government demonstrates that immunity from use and derivative use is coextensive with the scope of the privilege. As the *Murphy* Court noted, immunity from use and derivative use 'leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege' in the absence of a grant of immunity. The *Murphy* Court was concerned solely with the danger of incrimination under federal law, and held that immunity from use and derivative use was sufficient to displace the danger. This protection coextensive with the privilege is the degree of protection which the Constitution requires, and is all that the Constitution requires even against the jurisdiction compelling testimony by granting immunity." (Pp. 458-459 [32 L.Ed.2d at p. 225].)

Under Penal Code section 1324, the state has granted petitioners full immunity from *prosecution* for the offense to which the compelled testimony relates ("transactional immunity"), a broader protection than the Fifth Amendment requires. Although a state may not, by statute, bind the federal government, the United States Supreme Court has concluded that, in order to implement its new constitutional rule (that the Fifth Amendment privilege against self-incrimination is binding upon the states by the Fourteenth Amendment) (*Malloy* v. *Hogan, supra*), and at the same time, to "accommodate the interests of the State and Federal Governments in investigating and prosecuting crime," the federal government must be prohibited from making *any use* of compelled testimony and its fruits in any manner in connection with a criminal prosecution against the witness (*Murphy, supra*).[7] Because immunity from use and derivative use prohibits the federal prosecutorial authorities from using the compelled testimony in *any* respect, it insures that the testimony elicited cannot lead to the infliction of criminal penalties on the witness (*Kastigar, supra,* p. 453 [32 L.Ed.2d at p. 222]). Immunity from use and derivative use, therefore, provides

---

[7] If transactional immunity had been deemed to be the "constitutional rule," there could be no federal prosecution (*Kastigar,* p. 457, fn. 43 [32 L.Ed.2d at p. 224]).

protection that is coextensive with the privilege against self-incrimination, and thus complies with the constitutional mandate contained in the Fifth Amendment (*Kastigar, supra,* p. 458 [32 L.Ed.2d at p. 225]). We hold that since the grant of immunity afforded to petitioners in this case, pursuant to the provisions of Penal Code section 1324, afforded them protection in conformity with the constitutional privilege, their refusal to testify on the ground that they could be subject to federal prosecution was not justified, and they were properly adjudged in contempt of court.

The alternative writ is hereby discharged and the petition denied.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied December 22, 1972, and petitioners' application for a hearing by the Supreme Court was denied January 17, 1973. Tobriner, J., and Mosk, J., were of the opinion that the application should be granted.