[Crim. No. 11053. Third Dist. Nov. 30, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL CAMPBELL, Defendant and Appellant.

COUNSEL

Bryan Kemnitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher, Jana L. Tuton and James Ching, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BLEASE, J.—■■■ Defendant Carl Campbell contends on appeal that his prosecution for three narcotic offenses[1] was barred by the statutory grant of "transactional immunity" conferred by Penal Code section 1324 when it was invoked by the district attorney to compel his testimony in another felony case. The People contend defendant was given a constitutionally adequate substitute of "use immunity" by the court in the other case and by the trial court here which precluded the use of the testimony.

We reverse the conviction pursuant to the mandate of Penal Code section 1324. We hold that where, as here, the defendant properly invokes the privilege against self-incrimination in a felony proceeding and is compelled by invocation of section 1324 to testify to matters which tend to incriminate him as to presently charged offenses, he may not be prosecuted for them, notwithstanding that his testimony is not used against him.

FACTS

The charges in this case were filed on January 21, 1980. On the following April 18th, defendant was called as a witness in the case of People v. Hill,[2] charging a felony assault by Hill upon Barbara Dooley on August 4, 1979, at 1914 Fourth Street, Sacramento. When called to testify as a witness for the prosecution, defendant invoked his 5th Amendment privilege and refused to answer. His counsel advised the court of the pending drug charges and said the requested testimony related to them. The prosecuting attorney invoked Penal Code section 1324 and the court granted defendant "immunity as provided in

---

[1]Possession of heroin and cocaine for sale (Health & Saf. Code, § 11351) occurring on October 30, 1979, and maintaining a place for the sale of heroin (Health & Saf. Code, § 11366) on December 6, 1979.

[2]Sacramento Superior Court No. 56594.

Section 1324 . . . in that any testimony given at this trial, either prior to his invoking the 5th Amendment or subsequent thereto . . . shall not be used against him in any way whatsoever in any prosecution."[3] Defendant was then ordered to testify.

In response to questions by prosecuting and defense counsel defendant testified that he knew Dooley and that he lived at 1914 Fourth Street on the dates of the present charges and prior thereto. He also testified that Dooley had stayed at his apartment the night she was stabbed and was a drug user. Defense counsel attempted to challenge Campbell's credibility as affected by the pending charges.

At the outset of the trial in this case the defendant raised the bar of section 1324. The court denied the claim but directed that none of Campbell's testimony in the Hill case be used in his trial.

Sacramento Police Officer Thomas Backer then testified that on October 30, 1979, Barbara Dooley, as a confidential operator, attempted to purchase heroin from defendant at apartment B, 1914 Fourth Street. Backer watched Dooley enter the apartment and shortly thereafter leave the apartment. Using binoculars, Backer observed defendant walk out of the apartment, go upstairs to the second landing and thrust his hand forward and then return to the apartment. Backer went to the second landing and recovered, from a planter box, a baggie containing 10 bindles of cocaine and 19 balloons of heroin. Dooley testified she entered the apartment and attempted to purchase heroin from defendant. He informed her she would have to inject it inside the apartment. She turned down the offer and left. She also testified to having been to apartment B on more than 50 occasions and having purchased heroin from defendant there. The manager of the apartment complex testified that defendant had lived there for the past two years.

---

[3]The full order of the court stated:

" 'First of all, the Court finds that based upon arguments of counsel during the last several hearings that the witness has the right to invoke the 5th Amendment in the proceedings.

" 'Now, as to compelling him to testify: That good cause appearing therefor, it is hereby ordered that said witness, and said witness is hereby ordered, to appear before this Court, Department Ten, then and there to give answer to such questions as might be asked of said witness relative to this pending matter, charges of violation of Penal Code 217 and 245, which has been referred to in the District Attorney's declaration.

" 'It is further ordered that upon further complying with said order, said witness shall be, and said witness is, hereby granted immunity as provided in Section 1324 of the California Penal Code. More particularly, in that any testimony given at this trial, either prior to invoking the 5th Amendment or subsequent thereto upon my order compelling him to testify, shall not be used against him in any way whatsoever in any prosecution.'

"THE COURT: I have ordered you, Mr. Campbell, to testify. And anything that is stated in this trial, either before you invoked the 5th Amendment, or subsequent to the 5th, cannot be used against you in any subsequent prosecution."

DISCUSSION

I

■ The Fifth Amendment to the United States Constitution precludes a witness from being compelled to give testimony which might subject him to criminal liability. This privilege against self-incrimination has been construed not to prevent compulsory disclosure of criminal evidence but to protect against punishment for the revelations. (*Ullman* v. *United States* (1956) 350 U.S. 422, 438-439 [100 L.Ed. 511, 524-525, 76 S.Ct. 497, 53 A.L.R.2d 1008].)To carry out this purpose two kinds of immunity, "use immunity" and "transactional immunity," have been constitutionally sanctioned. ■ "'[U]se' immunity protects a witness only against the actual use of his compelled testimony and its fruits; 'transactional immunity' protects him against later prosecution related to matters about which he testified." (Witkin, Cal. Evidence (2d ed., 1982 pocket supp.) Witnesses, § 928, p. 508.) They are thus distinguished by the nature of the prohibitions which attach to the compelled testimony.

The phrase "transactional immunity" stems from the language of statutes enacted to implement the holding of *Counselman* v. *Hitchcock* (1892) 142 U.S. 547, 585-586 [35 L.Ed.2d 1110, 1121-1122, 12 S.Ct.195], which held that "a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offense to which the question relates." In *Brown* v. *Walker* (1896) 161 U.S. 591, 594 [40 L.Ed. 819-820, 16 S.Ct. 644], the court approved the constitutionality of the federal Compulsory Testimony Act of 1893, drafted to comply with *Counselman*. (*Kastigar* v. *United States* (1972) 406 U.S. 441, 451 [32 L.Ed.2d 212, 220, 92 S. Ct. 1653].) It provided that the witness shall not be prosecuted "on account of any *transaction*, matter or thing, concerning which he may testify, or produce evidence, . . . ." (Act of Feb. 11, 1893, ch. 83, 27 Stat. 443, repealed by the Organized Crime Control Act of 1970, Pub.L. No. 91-452, § 245, 84 Stat. 931; italics added.) This statute provided the label and model for transactional immunity statutes. (See *Ullmann* v. *United States, supra,* 350 U.S. 422, 438-439 [100 L.Ed. 511, 524-525]; *Kastigar* v. *United States, supra,* at pp. 451-452 [32 L.Ed.2d at pp. 220-221]; Witkin, Cal. Evidence (2d ed. 1966) Witnesses, §§ 927-929, pp. 861-864.)

"Use immunity" was constitutionally sanctioned in *Kastigar* v. *United States, supra,* 406 U.S. 441, 452-453 [32 L.Ed.2d 212, 221-222], which held that "immunity from the use of compelled testimony and evidence derived therefrom is coextensive with the scope of the privilege." It accomplished this, says *Kastigar,* by insuring that "the testimony cannot lead to the infliction of criminal penalties on the witness . . . ." (*Ibid.*) "While a grant of immunity must afford protection commensurate with that afforded by the privilege, it

need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege." (*Id.*, at p. 453 [32 L.Ed.2d at p. 222].) ■ Transactional immunity, though broader in effect than constitutionally required, necessarily remains as a viable constitutional predicate for the compulsion of incriminating testimony.

■ Incriminating testimony remains, of course, the common constitutional concern of both immunities. An immunity must give protection equivalent to that which attends the refusal to testify about matters which incriminate. The constitutional measure of that which incriminates is broadly cast. "[T]he privilege forbids compelled disclosures which could serve as a 'link in a chain' of evidence tending to establish guilt of a criminal offense . . . ." (*Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 326 [85 Cal.Rptr. 129, 466 P.2d 673]; see also *Blau* v. *United States* (1950) 340 U.S. 159 [95 L.Ed. 170, 71 S.Ct. 223]; *Kronick* v. *United States* (9th Cir. 1965) 343 F.2d 436.) The privilege is therefore not limited to the subject matter of the inquiry concerning which the testimony is compelled. As was said with respect to an early California immunity statute: "If, in giving . . . testimony, the testimony has reference to another offense committed by [the witness], he is within the protection of the statute, and upon any prosecution for such offense is authorized to plead . . . in bar thereof that . . . he gave testimony with reference to such offense." (*Ex parte Cohen* (1894) 104 Cal. 524, 531-532 [38 P. 364]; see also *In re Critchlow* (1938) 11 Cal.2d 751, 758-759 [81 P.2d 966].)[4]

Although both immunities give protection against punishment for incriminating disclosures they do so in significantly different ways.

■ "Use immunity" precludes punishment for the compelled disclosures by cutting the causal link between the incriminating testimony and its use through the exclusion of the compelled testimony or any evidence derived from

---

[4]Wigmore has classified the relation between incriminating "facts" and the crimes to which they are related as follows: "(1) The *composite fact of the criminal act itself* (e.g., arson, or embezzlement). (2) One of the *ultimate facts* which by law expressly form component parts of and are essential to the completed crime (e.g., setting fire by the witness, or improper disposal of valuables). (3) A *subordinate fact* which increases the probability of an ultimate fact and thus of the composite fact that the crime was committed (e.g., purchase of kerosene, or purchases of luxuries beyond the witness' normal means). (4) A *'clue' fact* which increases the probability that a subordinate fact will be discovered and thus that an ultimate fact, and the crime, will be proved (e.g., whereabouts of a certain gallon container, or list of merchants with whom the witness has done business). . . . It should be obvious . . . that unless the privilege is to remain an empty formula easily evaded, its protection must extend to subordinate facts and even to 'clue facts'. Most modern cases so hold." (8 Wigmore, Evidence (McNaughton rev.ed. 1961) § 2260, pp. 371-372.) California follows this rule. (See *Prudhomme* v. *Superior Court, supra,* 2 Cal.3d 320, 326; see also *People* v. *Coleman* (1975) 13 Cal.3d 867, 891-892 [120 Cal.Rptr. 384, 533 P.2d 1024].)

it. (See *Kastigar* v. *United States, supra,* 406 U.S. at p 441.) It operates as an exclusionary rule. "Transactional immunity" immunizes the defendant from prosecution for any offense which is implicated by the compelled testimony whether or not the testimony is in fact used. (*McLain* v. *Superior Court* (1950) 99 Cal.App.2d 109, 118 [221 P.2d 300].) "The grant of [transactional] immunity does not turn on the *product* but rather the *fact* of the inquiry." (*People* v. *King* (1967) 66 Cal.2d 633, 644 [58 Cal.Rptr. 571, 427 P.2d 171].) Transactional immunity thus requires the identification of the offenses for which the witness may not be prosecuted. This is done by answer to the question what offenses are implicated by the testimony. The measure of what incriminates *defines* the offenses immunized. Thus, the inference ("link") from compelled testimony to implicated offense serves to identify and hence *define* the offense immunized from prosecution.

These distinctions control the outcome of this case.

## II

Campbell's testimony as a witness in the Hill case was compelled by an order issued under the authority of Penal Code section 1324.[5] The section provides that, if ordered to respond to a question which the witness is constitutionally privileged not to answer, prosecution is prohibited "for or on account of any fact or act concerning which, in accordance with the order, he was required to answer or produce evidence." (Pen. Code, § 1324.) The immunity from prosecution conferred by this statute is transactional immunity. (See *Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 146 [137 Cal.Rptr. 14, 560 P.2d 1193]; *People* v. *Superior Court* (*Kaufman*) (1974) 12 Cal.3d 421, 426 [115 Cal.Rptr. 812, 525 P.2d 716]; *Nelson* v. *Municipal Court* (1972) 28 Cal.App.3d 889, 894 [105 Cal.Rptr. 46]; Witkin, Cal. Evidence (2d ed., 1982 pocket supp.) Witnesses, § 928, p. 510.)

---

[5]Penal Code section 1324 provides: "In any felony proceeding or in any investigation or proceeding before a grand jury for any felony offense if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and if the district attorney of the county in writing requests the superior court in and for that county to order that person to answer the question or produce the evidence, a judge of the superior court shall set a time for hearing and order the person to appear before the court and show cause, if any, why the question should not be answered or the evidence produced, and the court shall order the question answered or the evidence produced unless it finds that to do so would be clearly contrary to the public interest, or could subject the witness to a criminal prosecution in another jurisdiction, and that person shall comply with the order. After complying, and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, that person shall not be prosecuted or subjected to penalty or forfeiture for or on account of any fact or act concerning which, in accordance with the order, he was required to answer or produce evidence. But he may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order."

Penal Code section 1324 was first adopted in 1911 as a general immunity statute and contained the federal transaction language. It was repealed in 1917.[6] In 1953 section 1324 was again adopted and given its present general content. (Stats. 1953, ch. 1353, p. 2912.) In the process the immunity language took on a slightly different grammar; "fact or act" replaced "transaction, matter or things." The "fact" or "act" language stems from an 1857 statute which had as its purpose the securing of testimony before the Legislature (Stats. 1857, ch. 95, p. 97, see now Gov. Code, § 9410; and see *McLain* v. *Superior Court, supra,* 99 Cal.App.2d 109).[7] The language difference is without significance for it must, in any event, be fit to constitutional dimensions.[8]

■ Notwithstanding that section 1324 grants transactional immunity, the People claim that a constitutionally permissible *use* immunity was *judicially* conferred upon the defendant.[9] They argue that the Hill court's grant of immunity was judicially limited to "use" immunity by the court's conditional

---

[6]It provided, inter alia, that a person claiming the privilege of self-incrimination can be compelled to testify but that "he shall not be liable thereafter to prosecution . . . for the offense with reference to which his testimony was given, or for or on account of any transaction, matter or thing concerning which he may have testified . . . ." (Stats. 1911, ch. 293, p. 485; repealed, Stats. 1917, ch. 198, p. 291.) (Italics added.)

[7]Before *Counselman* California had also enacted another immunity statute on election law which provided that a witness compelled to testify against himself is "not thereafter . . . liable . . . to prosecution . . . for the offense with reference to which his testimony was given . . . ." (See Purity of Election Law, Stats. 1893, ch. 16, § 32, pp. 26-27.) This statute was construed in *Ex parte Cohen, supra,* 104 Cal. 524 at pages 531-532: "The statute purports to compel him to testify 'in the same manner as any other person,' and as the equivalent for his constitutional protection gives him a legislative protection of equal scope and effect by exempting him from all liability to punishment for the offense with reference to which he testifies. The exemption is as broad as the compulsion, and the protection is equal to that given by the constitution. . . . If, in giving such testimony, the testimony has reference to another offense committed by himself, he is within the protection of the statute, and upon any prosecution for such offense is authorized to plead or prove in bar thereof that under the compulsion of this section he gave testimony with reference to such offense."

[8]Courts have uniformly read the variant language of immunity statutes so as to meet constitutional requirements. (See *Nelson, supra,* 28 Cal.App.3d 889; see also *Ex parte Cohen, supra,* 104 Cal. 524; *In re Critchlow, supra,* 11 Cal.2d 753, 758-759; *McLain* v. *Superior Court, supra,* 99 Cal.2d 109; *People* v. *King, supra,* 66 Cal.2d 633.)

[9]The People make two subordinate claims. First, they claim that the judicial gloss on the immunity granted defendant may be viewed as a form of prosecutorial immunity. They rely on *People* v. *Superior Court (Crook)* (1978) 83 Cal.App.3d 335, 339 [147 Cal.Rptr. 856], and *People* v. *Brunner* (1973) 32 Cal.App.3d 908, 915 [108 Cal.Rptr. 501]. *Brunner* and *Crook* involve plea bargains, not the compulsion of testimony. There is no analogy to be drawn between the enforcement of a consensual plea bargain promising use immunity and the grant of transactional immunity *statutorily* required to be given in exchange for compelled testimony. Second, they rely upon *People* v. *Stewart* (1969) 1 Cal.App.3d 339, 343 [81 Cal.Rptr. 562] which held that a defendant was not granted immunity by section 1324 for a crime to which he had pled guilty. The court said: "[The] plea [of guilty], of course, remove[s] [the claimant] from the protection against self-incrimination . . . and from the purview of section 1324 . . . ." Section 1324 does not grant immunity unless, "but for [the] section, [the witness] would have been privileged to withhold the answer given . . . ." Having waived the privilege by the plea of guilty, there was nothing privileged and therefore nothing to immunize.

language, that "any testimony given at this trial . . . shall not be *used* against [Campbell]." (Italics added.) They imply the court may *judicially* substitute the constitutionally permissible "use" immunity for section 1324's *express* grant of transactional immunity. We disagree.

The People rely on cases in which "use" immunity was granted in exchange for compelled testimony in the absence of an express statutory immunity. (See *Daly* v. *Superior Court, supra,* 19 Cal.3d at p. 143 [civil discovery]; see also *People* v. *Coleman, supra,* 13 Cal.3d 867; *People* v. *Superior Court (Kaufman), supra,* 12 Cal.3d 421 [civil discovery]; *Byers* v. *Justice Court* (1969) 71 Cal.2d 1039, 1049 [80 Cal.Rptr. 553, 458 P.2d] [compelled disclosure of vehicle accident information], vacated on other grounds, *California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535]; *Tarantino* v. *Superior Court* (1975) 48 Cal.App.3d 465, 469 [122 Cal.Rptr. 61] [compelled psychiatric examination under Pen. Code, § 1367], accord *People* v. *Arcega* (1982) 32 Cal.3d 504 [186 Cal.Rptr. 94, 651 P.2d 338]; and see *People* v. *Sutter* (1982) 134 Cal.App.3d 806, 814-815 [184 Cal.Rptr. 829].)

Prior to *Byers,* it was "generally recognized that immunity may be given only under express statutory (or constitutional) authority. [Citations.]" (Witkin, Cal. Evidence (2d ed. 1966) Witnesses, § 927, p. 862.) *Byers* and subsequent cases carved out a limited exception to this rule. *Byers* said "that, when consistent with both legislative intent and effective enforcement of the criminal laws, a court may hold that such [use] immunity exists, and therefore that disclosure is required, *despite the absence of any specific legislative grant of immunity.*" (Italics added.) (*Byers, supra,* 71 Cal.2d at p. 1049.) The People would stand this exception on its head, by applying it to a statute which expressly establishes *the* standard of immunity. Here section 1324 expressly governs the compulsion of testimony in a felony proceeding. It sets forth the conditions under which immunity is to be granted, some of the procedures to be followed, the scope of immunity, and *the* consequence which attends compulsion of the testimony. We are bound by its provisions. (Cf. *People* v. *Superior Court (Kaufman),* supra, 12 Cal.3d at p. 426, and p. 426, fn. 4.)

Although present constitutional law authorizes the compulsion of testimony if *use* immunity is granted, transactional immunity remains a constitutionally valid ground for the compulsion of testimony. Section 1324 was adopted to conform to the earlier law of *Counselman* v. *Hitchcock.* The Legislature has not acted, and need not act, to narrow the grant of immunity to present constitutional limits.

### III

We turn to the application of section 1324 to this case.

■ Section 1324 may be invoked whenever, in a felony proceeding, a witness justifiably refuses to testify on the ground of self-incrimination. "The decision to initiate the request [to compel testimony] rests in the sole discretion of the prosecuting attorney. (*People* v. *Pineda* (1973) 30 Cal.App.3d 860, 867-868 [106 Cal.Rptr. 743].)" (*People* v. *Label* (1974) 43 Cal.App.3d 766, 774 [199 Cal.Rptr. 522].) When properly invoked, section 1324 grants immunity from prosecution for or on account of any fact concerning which, "in accordance with the order," the witness was required to testify. The order in the Hill case included *any* relevant testimony the defendant might be asked to give, including testimony given in response to cross-examination.

■ Accordingly, we look to the *defining* link between the compelled testimony and the offenses which are sought to be immunized. That link is broadly inclusive of offenses to which the "compelled testimony . . . would be relevant . . . ." (*People* v. *Superior Court* (*Kaufman*), supra, 12 Cal.3d at p. 429.) These offenses are inter alia revealed by the procedures by which the immunity is determined.

The procedure is initiated by the refusal of a witness to answer a question on grounds of self-incrimination. The prosecutor must then request that the court order an answer. A hearing is held at which, as a preliminary fact (Evid. Code, §§ 940, 402, 404), the claimant of the privilege must "show cause" why the question should not be answered, i.e., why the answer might be incriminating. The defendant "has the burden of showing that the proffered evidence might tend to incriminate him . . . ." (Evid. Code, § 404.) The specification of the crimes implicated by the answer serves to *define* the offenses to which the compelled answer "relates." If the compelled answers are incriminatorily "linked" to such offenses the witness is thereby immunized from prosecution for them. "It matters not that the same testimony [as here] could have been given by others." (*McLain* v. *Superior Court, supra,* 99 Cal.App.2d at p. 118.)

Defendant, when called to testify in the Hill trial invoked his 5th Amendment privilege. His counsel advised the court the compelled testimony "could in [some] way be used against my client in the cases which are now pending against him, and, in particular, the charges of maintaining a house . . . for the use and sale of narcotics." The defendant was nonetheless granted immunity, an action which necessarily involved a determination that defendant's testimony might incriminate him. The subsequent order by the trial court in this case that the testimony not be used embodies the judicial conclusion that the testimony incriminates the defendant as to the offenses charged. These judgments are supported by the record of the compelled testimony.

Defendant's tenancy at 1914 Fourth Street on December 6, 1979, and prior thereto, and his ties to drug use there are relevant to the charge of maintaining a

place where narcotics are sold. "To constitute the offense of 'maintaining' there must be some purpose of continuity in the use of the place for the proscribed illegal conduct." (*People* v. *Holland* (1958) 158 Cal.App.2d 583, 588 [322 P.2d 983]; see also *People* v. *Horn* (1960) 187 Cal.App.2d 68, 72-73 [9 Cal.Rptr. 578].) Similarly, defendant's occupancy of the apartment complex on the date of the seizure and his access to the seized narcotics are relevant to his possession of them. Moreover, his friendship with the chief prosecuting witness, Barbara Dooley, and knowledge of her narcotic usage and her frequenting of defendant's apartment are also relevant to the charge of possession of heroin for sale.

Section 1324 mandates that the defendant not be prosecuted for these offenses.[10]

The judgment is reversed.

Sparks, J., concurred.

**EVANS, Acting P. J.**—I dissent. The effect of the majority conclusion would eliminate a grant of limited or derivative use immunity under the provisions of Penal Code section 1324 (all further code references will be to the Penal Code). I deem that conclusion to be at odds with the statute, its obvious intent, and decisional authority.

A brief chronology of events is necessary to place the immunity granted in proper perspective. On January 21, 1980, defendant was charged with possession of heroin and cocaine for sale (Health & Saf. Code, § 11351), and maintaining a place for the sale of heroin (Health & Saf. Code, § 11366). He was arraigned on those charges January 22, 1980. An amended information charging defendant with three prior felony convictions was filed February 11, 1980; he was arraigned on those charges the same day. On April 22, 1980, in a totally unrelated criminal prosecution, defendant was called as a witness. He eventually refused to answer questions concerning the use of a knife as an assault weapon, invoking the Fifth Amendment privilege against self-incrimination. On motion of the People, the court granted defendant immunity and directed

---

[10]To use a common and colorful phrase, the defendant has been given an immunity bath. But that is so only because the prosecution has drawn the bathwater. It need not have done so. The prosecution alone controls the invocation of the immunity statute (see *Daly* v. *Superior Court, supra,* 19 Cal.3d at p. 146; *People* v. *Williams* (1968) 265 Cal.App.2d 888 [71 Cal.Rptr. 773]) and the scope of questions required to be answered (see *People* v. *Label, supra,* 43 Cal.App.3d at p. 774). Moreover, the prosecution did not seek to limit the scope of defendant's testimony, a course of action which also might have obviated the result we are compelled to reach. Nor did the trial court seek to weigh the consequences of immunity against the need for the testimony, by invoking its statutory power to determine whether immunity "would be clearly contrary to the public interest." (Pen. Code, § 1324.)

him to answer the questions posed. The court expressly granted and limited the extent of the immunity as follows: "[The] witness is hereby granted immunity as provided in Section 1324 of the California Penal Code. *More particularly, in that any testimony given at this trial, either prior to his invoking the 5th Amendment or subsequent thereto upon my order compelling him to testify, shall not be used against him in any way whatsoever in any prosecution.*" (Italics added.) Defendant then testified that he lived at 1914 Fourth Street, apartment B, and had so resided for two years. He further testified that he was acquainted with Barbara Dooley. These were the only two facts remotely connected with the present prosecution on which he testified in the unrelated proceeding.

On July 15, 1980, trial started in this proceeding, and defendant asserted a right to absolute transactional immunity which would bar prosecution on all then pending criminal charges against him. He argues also that his admission of residence bars prosecution on the Health and Safety section 11366 charge and his acknowledgement of acquaintance with Barbara Dooley, the narcotics informant, barred her testimony on the Health and Safety Code section 11351 charges.

I

To conclude as the majority opinion does would require, in every instance of immunity granted pursuant to section 1324, a blanket immunity for any and all criminal acts as the price of the testimony. To impose such immunity would totally frustrate the purpose of the section. (*People* v. *Label* (1974) 43 Cal. App.3d 766, 774 [199 Cal.Rptr. 522].) A trial court is empowered to grant a limited or a derivative use immunity as it did in this instance. None of the evidence used in the instant proceeding was derived from defendant's testimony in the prior unrelated action, nor was it developed as a result of that testimony. The evidence produced in this trial was the product of police investigation six months prior to his compelled testimony. In this proceeding the police utilized 13 witnesses: Sacramento police officers and employees Backer, Nelson, Wilson, Blanas, Tatarakis, Jasper, Lenihan, Gonzalez, Sacramento Sheriff Deputy Robert Smith, Sacramento County criminalists Charles Smith, Kubota, defendant's apartment manager Billie Crawford, and narcotics informant Barbara Dooley. None of the testimony produced from the prosecution witnesses can be remotely connected to defendant's prior testimony for which he was granted derivative use immunity. Dooley and the narcotics officers testified that she went to apartment B at 1914 Fourth Street on October 30, 1979, for the purpose of effecting a purchase of heroin from the defendant. Billie Crawford testified that defendant had lived in apartment B for two years. The testimony of the criminalist and police property custodians was not related to any testimony given by defendant in the earlier unrelated prosecution and was connected to actions taken six months prior to the compelled testimony.

The trial judge in the instant proceeding in commenting on defendant's testimony regarding his residence and acquaintance with Barbara Dooley correctly concluded that "there is nothing that could have been derived from that testimony since it was so incidental." That statement is particularly apt in view of defense witness Peggy Hayes' testimony that defendant resided at 1911 Fourth Street rather than 1914 Fourth Street.

Use and derivative use immunity is recognized in California coextensively with transactional immunity; when utilized the former does not purport to interfere with any prosecution based on evidence which is not derived directly or indirectly from the immunized testimony. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 145 [137 Cal.Rptr. 14, 560 P.2d 1193].) The following language of section 1324 makes this conclusion self-evident. ". . . After complying, and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, that person shall not be prosecuted *or subjected to penalty or forfeiture for or on account of any fact or act concerning which, in accordance with the order, he was required to answer or produce evidence. . . .*" (Italics added.) The immunity contemplated by the statute and decisional authority is immunity from use of compelled testimony and any evidence derived therefrom, or immunity from prosecution of offenses to which the compelled testimony relates. (*Kastigar* v. *United States* (1972) 406 U.S. 441, 443 [32 L.Ed.2d 212, 215-216, 92 S.Ct. 1653].) The immunity granted provides "a sweeping proscription of *any use, direct or indirect,* of the compelled testimony and any information derived therefrom." (Italics added. *Id.,* at p. 460 [32 L.Ed.2d at p. 226]; see also *People* v. *Rucker* (1980) 26 Cal.3d 368, 390 [162 Cal.Rptr. 13, 605 P.2d 843].)

To apply immunity in this instance would grant defendant absolute transactional immunity, although none of the evidence produced against him was the product of his compelled testimony, either directly or indirectly, nor was the evidence produced derived from or discovered as a result of defendant's compelled testimony in the unrelated proceeding.

I would affirm the judgment.

A petition for a rehearing was denied December 20, 1982, and respondent's petition for a hearing by the Supreme Court was denied February 23, 1983.