[No. B138334. Second Dist., Div. Six. May 1, 2000.]

LEONARD GRIEGO, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Blatz, Pyfrom & Associates, Paul B. Blatz and Sherie A. Taylor for Petitioner.

No appearance for Respondent.

Michael D. Bradbury, District Attorney, David Lehr and Miriam R. Arichea, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**PERREN, J.**—The state initiates civil proceedings to declare a person a sexually violent predator (SVP). In exchange for his deposition testimony on certain matters, he receives transactional immunity for those matters and "any of the matters that he may testify to." Here we conclude that he may not be prosecuted for a crime relating to his deposition testimony.

### FACTS

The People initiated proceedings to declare petitioner Leonard Griego an SVP. (Welf. & Inst. Code, § 6600 et seq.) While the petition was pending, the People noticed his deposition.

Griego, claiming the shield of the Fifth Amendment, moved to quash the deposition or, in the alternative, for a protective order. In response, the People represented to the trial court that they would limit their inquiry to: (1) Griego's current mental illness; (2) his past charged criminal conduct; and (3) an alleged sexual assault upon his half brother. The People asserted that this information was relevant because it would be used by mental health professionals to diagnose and treat Griego for a personality disorder. The deputy district attorney acknowledged that the Fifth Amendment was implicated. He assured the court, however, that there would be no prosecution because the offenses at issue had either already resulted in convictions or were barred by the statute of limitations.[1]

The court denied Griego's motions. It found that the three areas of inquiry proposed by the People did not jeopardize his Fifth Amendment rights. The court stated, ". . . I think with the People's statement that gives you the blanket protection for your client."

Griego's deposition took place at the Ventura County Jail on September 2, 1999, and lasted for more than two hours. Prior to questioning, the People stipulated that "in consideration of [Griego] waiving his Fifth Amendment right against self-incrimination and fully and truthfully testifying today, [the People] cannot and will not prosecute [Griego] in regard to *any matters* that he may testify to here today, including but not limited to uncharged allegations of any prior criminal activities." (Italics added.)

---

[1]Deputy district attorney: "I'll be happy to place on the record that it's the People's opinion that the statute of limitations has run on any and all crimes against Julian [R.] that occurred while Julian [R.] was a minor and that if the statute of limitations for some reason beyond the ones that the People were able to find allows that prosecution, we waive it at this time, we waive that exception to the statute of limitations on behalf of the prosecuting agency and the county of record, and we do that with prejudice."

During the course of the deposition, the deputy district attorney questioned Griego on a variety of subjects: his sexual orientation, sexual preferences for younger males, sexual fantasies, the operation of his martial arts studio, and his past sexual encounters—matters which generally were confined to the three areas of inquiry approved by the trial court. Towards the conclusion of the deposition, however, the questioning of Griego went beyond the scope of inquiry as represented to the court. The People questioned Griego about a season pass for Magic Mountain amusement park. The pass was found in Griego's residence during a parole search conducted in 1996. On one side of the pass is a photograph of a young boy. On the reverse side is the hand-printed name of "Richard."[2]

Griego responded to the People's questions regarding the pass. He testified that he "might have . . . found [the pass] on the ground." The deputy district attorney then asked Griego whether he went to Magic Mountain with underage males. Griego recalled one such trip with someone whom he identified as "Robert."[3] The deputy district attorney pressed the issue, focusing his questions on whether Griego obtained Magic Mountain passes for other underage males, and whether Griego went to Magic Mountain with any other underage males. Prior to the deposition, the People suspected that Griego was molesting young boys. Investigators believed the boy whose face and name appeared on the Magic Mountain pass may have been one of Griego's victims. District Attorney Investigator Beth Hamilton, after some delay, had obtained the records at Magic Mountain. She learned that the young boy on the Magic Mountain pass is Richard R. As part of her ongoing investigation, Hamilton interviewed Richard R., who confirmed that Griego had obtained the pass for him.

Griego was charged in six counts of a complaint with having sexually molested a minor, Richard R. (Pen. Code, § 288a, subd. (b)(2)), and in one count with having distributed lewd materials to a minor (Pen. Code, § 288.2).

Claiming that he had been provided with transactional immunity, Griego moved to strike the complaint. The motion was denied. The trial court noted that it found no relationship between what was learned at the deposition and the underlying facts giving rise to the charges of sexual molestation.

Griego sought relief by way of a writ of mandate. Finding that he lacked an adequate remedy at law, we have issued an order to show cause for a writ of mandate and stayed further proceedings in the trial court.

[2]The district attorney obtained possession of the pass following the deposition. It had previously been in the possession of the probation department.

[3]Robert is not alleged to be a victim in this case.

## DISCUSSION

In his petition, Griego reasserts his contention that the People granted him transactional immunity in exchange for his deposition testimony in the SVP proceeding, and that the grant is a bar to his prosecution.

The privilege against self-incrimination, guaranteed by the Fifth Amendment, "registers an important advance in the development of our liberty—'one of the great landmarks in man's struggle to make himself civilized.'" (*Ullmann v. United States* (1956) 350 U.S. 422, 426 [76 S.Ct. 497, 500, 100 L.Ed. 511, 518, 53 A.L.R.2d 1008].) "[A] grant of immunity is valid only if it is coextensive with the scope of the privilege against self-incrimination . . . ." (*Murphy v. Waterfront Comm'n* (1964) 378 U.S. 52, 54 [84 S.Ct. 1594, 1596, 12 L.Ed.2d 678, 681].) "The object [of the privilege against self-incrimination] was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime. The privilege is limited to criminal matters, but it is as broad as the mischief against which it seeks to guard." (*Counselman v. Hitchcock* (1892) 142 U.S. 547, 562-563 [12 S.Ct. 195, 197-198, 35 L.Ed. 1110, 1114] [holding that a federal immunity statute did not go far enough in its grant of immunity to require the witness to answer incriminating questions]; but see *Kastigar v. United States* (1972) 406 U.S. 441, 461-462 [92 S.Ct. 1653, 1665-1666, 32 L.Ed.2d 212, 226-227] [recognizing the constitutionality of a statutory grant of "use immunity"].)

Although immunity in a felony proceeding is usually granted by the court following application by the prosecution (Pen. Code, § 1324), the same result is achieved where, as here, the prosecution has obtained testimony under a promise to withhold prosecution. (*People v. Brunner* (1973) 32 Cal.App.3d 908, 914-915 [108 Cal.Rptr. 501] [district attorney's promise of immunity from prosecution in return for testimony in murder case].) Indeed, an application pursuant to Penal Code section 1324 would have been un-availing in the instant matter since the immunity statute has no application to matters other than felony proceedings or investigations before the court or the grand jury. (*Ibid.*)

A deponent's Fifth Amendment rights do not evaporate when invoked in the sphere of civil litigation. (*People v. Superior Court (Kaufman)* (1974) 12 Cal.3d 421 [115 Cal.Rptr. 812, 525 P.2d 716].) *Daly v. Superior Court* (1977) 19 Cal.3d 132 [137 Cal.Rptr. 14, 560 P.2d 1193] is instructive. In that case, a wrongful death lawsuit arising out of the murder of a newspaper editor, the defendants, potential suspects in the crime, refused to respond to

discovery for fear of future prosecution. The Supreme Court ruled that, unless these deponents were protected against the use of compelled answers in subsequent criminal prosecutions, the constitutional privilege against self-incrimination allows them to refuse to answer any question or to produce any material that may reveal potentially incriminating information. (*Id.* at pp. 142-143.) "It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." (*Kastigar v. United States, supra,* 406 U.S. at pp. 444-445 [92 S.Ct. at p. 1656, 32 L.Ed.2d at p. 217], fns. omitted.)

The difference between the formal grant on application (Pen. Code, § 1324 et seq.) and the less formal promise made here to withhold prosecution lies not only in the power of the court to compel testimony coupled with the right of the prosecution to seek a contempt order for refusal or failure to answer or otherwise comply with the order, but in the certainty and precision of the order. "The statute establishes a procedure under which the bargain between prosecutor and witness, each to perform certain acts in the future, can be made a matter of record so that dishonesty, equivocation, and misunderstanding may be minimized." (*People v. Brunner, supra,* 32 Cal.App.3d at p. 914.) When the agreement is made without the benefit of the immunity statute, the effect is the same. "[T]he People are estopped from arguing noncompliance." (*Id.* at p. 915.)

In either case, it is the exercise of the prosecutorial prerogative that results in immunity. "To use a common and colorful phrase, the defendant has been given an immunity bath. But that is so only because the prosecution has drawn the bathwater. It need not have done so. The prosecution alone controls the invocation of the immunity statute [citations] and the scope of questions required to be answered [citation]. Moreover, the prosecution did not seek to limit the scope of defendant's testimony, a course of action which also might have obviated the result we are compelled to reach." (*People v. Campbell* (1982) 137 Cal.App.3d 867, 878, fn. 10 [187 Cal.Rptr. 340]; see *In re Weber* (1974) 11 Cal.3d 703, 720 [114 Cal.Rptr. 429, 523 P.2d 229].)

The People do not dispute that they agreed to a form of immunity in exchange for Griego's testimony, but urge this court to characterize it as a "limited form of transactional immunity," analogous to use immunity. The People contend that this permits the application of the doctrine of inevitable discovery: evidence need not be suppressed if the prosecution can establish by a preponderance of the evidence that the information would inevitably

have been discovered by lawful means. (*Nix v. Williams* (1984) 467 U.S. 431, 444 [104 S.Ct. 2501, 2509, 81 L.Ed.2d 377, 387-388]; *Kastigar v. United States, supra,* 406 U.S. at p. 461 [92 S.Ct. at p. 1665, 32 L.Ed.2d at p. 226] [an individual granted use immunity may be prosecuted for the immunized offenses provided the evidence used is derived "from legitimate independent sources"].)[4] In support of this proposition, the People assert that, at the time of Griego's deposition, there was an investigation under way and that all of the information linking Griego to Richard R. was discovered wholly independent of his deposition. The district attorney stated that in May of 1999, four months before Griego's deposition was taken, he asked his investigator to "find the minor whose name appears on a Magic Mountain Season pass which was seized during a parol [*sic*] search of the Defendant's home and business in July 1996." Thus, the People claim it was the investigation and not Griego's deposition that led to the charges involving Richard R. We have no reason to doubt the People's assertion. The doctrine of inevitable discovery, however, has no application where, as in the present matter, the prosecution has provided the accused with transactional immunity.

The People also argue that Griego was not asked about any matters relating to criminal offenses for which he is presently charged. (See *People v. Lawrence* (1972) 25 Cal.App.3d 498 [102 Cal.Rptr. 16].) They are mistaken. Counsel for Griego was meticulous in making it very clear that his client would be receiving transactional immunity in exchange for his testimony "in regard to any of the matters that he may testify to today, including but not limited to uncharged allegations of any prior criminal activities. [¶] This stipulation shall waive all rights of prosecution . . . whether the . . . prosecution involves matters known or unknown at the time of [Griego's] testimony today." The People agreed.

Unknown to Griego at the time of his deposition, the People were attempting to locate the individual whose face appeared on the pass. Knowing that an investigation was ongoing concerning the Magic Mountain pass and the identity of the youth whose photograph it bore, the district attorney enlarged the scope of the questioning in an attempt to ascertain the name of this likely victim of molestation. The People's avowed purpose for the deposition did not address this line of questioning; nonetheless, the People chose to so inquire. While the People had the right to expand the scope of the deposition, the People were bound by the immunity agreement—an agreement whose scope lay within the discretion of the district attorney. (*People v. Label* (1974) 43 Cal.App.3d 766, 774 [119 Cal.Rptr. 522].)

---

[4]Included within the independent source doctrine are the inevitable discovery and the independent evidence theories. (See *Murray v. United States* (1988) 487 U.S. 533, 539 [108 S.Ct. 2529, 2534, 101 L.Ed.2d 472, 481].)

The result is not changed because Griego testified that it was Robert rather than Richard R. Had he testified that it was Richard R., transactional immunity surely would attach and the complaint would be dismissed. (*Escamilla v. Superior Court* (1969) 271 Cal.App.2d 730, 735 [76 Cal.Rptr. 704].) ▉ " 'Transactional immunity' immunizes the defendant from prosecution for any offense which is implicated by the compelled testimony whether or not the testimony is in fact used." (*People v. Campbell, supra,* 137 Cal.App.3d at p. 874.) " 'The grant of [transactional] immunity does not turn on the *product* but rather the *fact* of the inquiry.' " (*Ibid.*; *People v. King* (1967) 66 Cal.2d 633, 644 [58 Cal.Rptr. 571, 427 P.2d 171].) The grant applies to the area of inquiry and attaches not only if it directly bears on the matter for which prosecution may be contemplated but on matters that may lead to such evidence. This rule has been at the root of the privilege against self-incrimination since our country's founding. As early as 1807 Chief Justice Marshall said, " 'Many links frequently compose the chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule, that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable case, that a witness, by disclosing a single fact, may complete the testimony against himself; and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction.' " (*Counselman v. Hitchcock, supra,* 142 U.S. at p. 566 [12 S.Ct. at p. 199, 35 L.Ed. at p. 1115], quoting 1 Burr's Trial 244.)

▉ The People rely on *People v. Lawrence, supra,* 25 Cal.App.3d 498, to support their assertion that transactional immunity does not apply here because Griego testified about Robert. In *Lawrence,* the defendant's immunized testimony concerned the smuggling of narcotics. At the time of the testimony, the authorities had no knowledge of a conspiracy to commit murder. It was held that this immunity did not prevent the authorities from later prosecuting him for the unrelated conspiracy to commit murder. (*Id.* at p. 509.)

Here, in contrast to the defendant in *Lawrence,* Griego was explicitly asked about the identity of an individual whom the People suspected to be a likely victim of a molestation, the very crime now charged. Efforts were being made to identify and locate this potential victim. The questions about taking underage boys to Magic Mountain necessarily called for potentially incriminating answers and related to the People's ongoing investigation. These queries and Griego's answers became, in the words of the stipulation, "*matters* that he . . . testif[ied] to . . . ." (Italics added.) In other words, the People bestowed transactional immunity upon Griego for the crime of sexual

molestation of Richard R., by the representations to the trial court concerning the scope of the deposition, by entering into the stipulation and by the very questions that were asked.

## CONCLUSION

SVP proceedings are deemed civil; the state's avowed purpose is to provide remedial treatment for the inmate. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1144 [81 Cal.Rptr.2d 492, 969 P.2d 584]; *In re Parker* (1998) 60 Cal.App.4th 1453, 1466 [71 Cal.Rptr.2d 167].) Here, the deposition and waiver of Griego's rights under the Fifth Amendment were justified upon the promise that the authorities were seeking to diagnose and treat his mental illness. At the same time, however, the authorities were investigating possible criminal charges against Griego.

If the facts warrant, the People have the duty to have Griego declared a "sexually violent predator." (Welf. & Inst. Code, § 6601, subd. (i).) If Griego has committed a crime, the People have the duty to exercise prosecutorial discretion in deciding to bring charges. (Gov. Code, § 26500; *People v. Eubanks* (1996) 14 Cal.4th 580, 588-589 [59 Cal.Rptr.2d 200, 927 P.2d 310].) In the appropriate case, both avenues may be followed; the remedies are not mutually exclusive. But here, under an explicit promise of transactional immunity, the People questioned Griego in the SVP deposition about suspected but uncharged criminal acts. The People are bound by their agreement and may not prosecute these counts.

Let a writ of mandate issue directing respondent superior court to set aside its order of January 5, 2000, denying the motion to dismiss the criminal complaint and to enter a new order that is in conformance with the views expressed in this opinion. The order to show cause and the stay of proceedings, having served their purposes, are dissolved.

Gilbert, P. J., and Yegan, J., concurred.